## SCHWALM vs. MCINTYRE, impleaded &c.

Whether a written contract offered in in evidence should be rejected because it appears upon its face to have been altered since its execution, or whether the legal presumption would be that such alterations were made before its delivery, is not here decided.

Where a written instrument offered in evidence was rejected on improper grounds, a judgment against the party offering it will not be reversed for that reason, if proof was afterwards made of facts showing that the instrument was not entitled to be considered in evidence.

A contract, signed by R. & M., to deliver to the plaintiff a certain quantity of wood, was altered by R. at the plaintiff's request, by inserting the words, "It is to be good hard wood." *Held,*

1. That the alteration was material.

2. That the instrument could not be read in evidence against M. without previously showing that the alteration was authorized by him.

Such authority could not be inferred from M.'s having signed with R. the instrument as originally drawn, and left it in R.'s possession to be delivered to the plaintiff.

The object of secs. 92 and 99, chap. 137, R. S., is only to dispense with proof of the signature of the party sought to be charged upon a written instrument; and such party is at liberty to show a subsequent alteration of the instrument without having denied its execution by a verified answer.

APPEAL from the County Court of *Winnebago* County.

This was an action against *William Roache* and *A. McIntyre* upon a written contract for the delivery of wood. The complaint avers a failure to fulfill the contract, and damages. *McIntyre* answered by a general denial. The pleadings were not verified. On the trial, the plaintiff, offered in evidence the written contract declared upon, which, after the date, was as follows: "For value received, I promise to deliver to *L. Schwalm* or bearer, at Oshkosh, forty cords of wood, on or before the 20th day of June, 1862. It is to be good hard wood. WILLIAM ROACHE, A. McINTYRE." The defendant *McIntyre* objected to the evidence, on the ground that it appeared upon the face of the instrument that two alterations had been made in the body of it. The court sustained the objection, and decided that the instrument could not be received in evidence unless said alterations were explained. The plaintiff, as a witness in his own behalf, then testified: "I first saw the note at my store in Oshkosh. It was brought there by the defendant *Roache.* I think the words "at Oshkosh" were in it when I first saw it. When *Roache* handed me the note, I told him it did not comply with our contract; that it had to be good hard wood. He said it would not make much difference, as he had only hard wood; he would however put it in. He then put in the words, 'It is to be good hard wood,' and I took the note." The note was then again offered in evidence, and rejected, as evidence

against *McIntyre*, on the ground that it had been altered after it was executed by him.   Judgment of nonsuit was rendered in favor of *McIntyre*, on his motion; and the plaintiff appealed.

*Whittemore & Weisbrod*, for appellant, cited secs. 99 and 92, ch. 137, R. S., and *Whitman v. Wood*, 6 Wis., 678.   2. They also contended that it was not apparent upon the face of the contract that any alterations had been made in the body of it since its execution.   3. When the question is, whether a material alteration, apparent upon the face of a written instrument, was made before or after execution, the instrument, with all the circumstances of its history, its nature, the appearance of the alterations, the possible or probable motives to the alteration, and its effect upon the parties respectively, ought to be submitted to the jury.   *Maybee v. Sniffen*, 2 E. D. Smith, 1; *Same Case*, 10 N. Y. Leg. Obs., 18.   4. The contract should have been received after the alteration had been explained by the plaintiff's testimony.   It is to be presumed that *McIntyre* knew the nature of the previous verbal contract between the parties, as well as *Roache*; that they intended to express its provisions in the chattel note; and that after the signing of the same, *McIntyre* delivered it to *Roache* for the purpose of consummating the verbal contract, and carrying it into effect.   But this authority carries with it, as an incident, all the powers which are necessary as means to effectuate the purpose for which it was created.   In this respect there is no distinction, whether the authority given to an agent is general or special, or whether it is express or implied.   In each case it embraces the appropriate means to accomplish the desired end.   Story on Agency, § 97, and note 1; *Vliet vs. Camp*, 13 Wis., 198. Thus where an agent is employed to procure a negotiable bill or note, belonging to his principal, to be discounted, he may, unless specially restricted, indorse it in the name of the principal, and bind him by the indorsement.   Story on Agency, § 97, and note 2.   Even in regard to bills of exchange and promissory notes, an *addition or correction* to supply or declare

the *real intention* of the parties, may, at common law, be made, even after a bill or note has been in circulation. Chitty on Bills, 166, 184, 185, and cases cited. Again, the alteration made before delivery was not material, because the law certainly would imply that it must be good wood, and if the judge had not ruled out the chattel note the plaintiff might have shown by extrinsic evidence, that, by the custom of the country, none but hard wood could have been meant. An immaterial alteration does not effect the validity of a note, even as against a surety. *Arnold vs. Jones*, 2 R. I., 345; *Reed vs. Kemp*, 16 Ill., 445.

*Earl P. Finch*, for respondent.

*By the Court*, PAINE, J. It is unnecessary to determine whether or not the court below was right in rejecting the note or contract offered in evidence, until the plaintiff had explained what appeared to be alterations upon the face of it. For even though the legal presumption, in the absence of any proof to the contrary, may have been, as claimed by the appellant, that such alterations had been made before delivery, yet the plaintiff himself afterwards testified that the alteration as to the quality of the wood was made by the defendant *Roache* after the instrument was signed by *McIntyre*, and without anything to show that it was done by his knowledge or consent. That alteration was certainly a material addition to the contract, and it cannot be claimed that *McIntyre* was bound by it, as altered, unless it is shown that he authorized the alteration ; and the burden of showing that was on the plaintiff. Even though the court erred, then, as to the presumption to be derived from the face of the paper, without any other proof, yet the judgment should not be reversed for that error, when the subsequent proof of the plaintiff showed that to be true which the court had presumed, thereby devolving on the plaintiff the burden of showing that the alteration was authorized by *McIntyre*, if he wished to charge him.

And no such authority could be inferred from the fact that *McIntyre* had signed the instrument as originally drawn, together with *Roache*, and left it in the possession of the latter to be delivered to the plaintiff. The appellant's counsel compare it to the case of an agent employed to negotiate commercial paper, where, unless specially restricted, he may indorse it so as to bind the principal. An indorsement is a usual mode of transfer, and an agent, being employed to transfer, may well be held to have authority to transfer in the usual mode unless restricted. But it is not usual for a mere joint contractor to add new provisions to the contract, so as to bind his co-contractor. Hence there is nothing on which to found such an implied authority.

The appellant's counsel rely strongly upon section 99, chap. 137, R. S., which provides that "in actions against two or more defendants upon contracts in writing alleged to have been executed by such defendants as partners or otherwise, proof of the joint liability shall not be required, to entitle the plaintiff to judgment, unless such proof shall be rendered necessary by answer denying the execution of such writing, verified by affidavit." The answer here did not deny the execution of the contract; hence, it is said, the defendants could not disprove their liability by showing that it had been altered. But it has been held that the object of that provision now found in section 92, chapter 137, was merely to dispense with the necessity of proving the signature to a contract or other writing, and that the party might prove alterations, although he had not denied the signature. *Low vs. Merrill*, Burnett's Reports, 185. And we have come to the conclusion that section 99 can have no other effect, even in cases where it is applicable. And it would seem to be necessary, after the enactment of sections .92 and 98, only in cases where instruments are signed by some firm name or style which does not specify the names of all the parties to the firm, or joint contract. In such case, the paper itself being in evidence, no further proof should be necessary

to show that those defendants whose names did not appear on the paper were justly liable with those whose names did appear, unless the execution of the writing was denied. And in any event, the object of these provisions being only to dispense with proof of the signature of the party, he is left at full liberty, in cases where he cannot truly deny the signature, to show all other defenses, among which would be a subsequent alteration of the instrument.

For these reasons the judgment is affirmed, with costs.