## AUSTIN vs. AUSTIN and another.

EVIDENCE. *(1) How genuineness of instrument offered in evidence to be questioned. (2) Declarations of agent, when evidence against principal; of husband as wife's agent. (3) Exclusion of evidence for remoteness. (4) Impeaching evidence.*

EQUITY: FORECLOSURE. *(5) Determination of facts: Court and jury. (6) Denial of right to open and close; when not fatal error. (7) Reversal on preponderance of evidence.*

1. Where an alteration appears on the face of an instrument, the question of its genuineness must be raised, and the alteration explained, before the instrument is received in evidence *(Schwalm v. McIntyre*, 17 Wis., 232); and where the answer did not deny the execution of a note such as was set out in the complaint, and plaintiff put in evidence a corresponding note, purporting to be made by defendant, without objection then made to its genuineness, but afterwards defendant was permitted to testify that "he had doubts about" its being the note executed by him, but did not positively *deny* its genuineness, there was no error in excluding from the jury such testimony, and refusing instructions based upon the theory that the note so offered was not the original and genuine note.

2. The declarations of an agent are not admissible in evidence against his principal unless made at the time of the transaction in question, so as to constitute a part of the *res gestœ;* and a husband, acting as agent of his wife, has no greater power or capacity than other agents. *Livesley v. Lasalette*, 28 Wis., 38.

Austin vs. Austin and another.

3. Certain evidence (for which see the opinion) to show that plaintiff's agent had received from defendants large payments on the note in suit, not admitted by plaintiff, *held* to have been properly excluded on the ground that it was *too remote* from the fact to be proven.
4. A witness cannot ordinarily be impeached by evidence contradicting his testimony upon irrelevant and immaterial matters.
5. In foreclosure of a mortgage, where questions as to payments not admitted by plaintiff are submitted to a jury, the judge must find the facts, notwithstanding the verdict; and slight departures from the strict rules which govern actions at law upon the trial, not affecting the substantial justice of the judgment, will be disregarded on appeal.
6. Even in actions at law tried by a jury, a denial of plaintiff's right to open and close the argument is not ground of reversal unless injustice has manifestly resulted therefrom *(Marshall v. Am. Exp. Co.,* 7 Wis., 1)*;* and still less is it ground of reversal in an equitable action.
7. The judgment herein is reversed on the ground that it appears from the clear preponderance of evidence, that a payment was made which was not allowed by the court below.

APPEAL from the Circuit Court for *Rock* County.

Action, commenced in October, 1871, to foreclose a mortgage given by the defendant *Thomas H. Austin* in October, 1864, to secure payment of his note of the same date for $4,000, payable two years from date, with interest at seven per cent. This note (with another for $500), and the mortgage, were for purchase money of the mortgaged premises. The complaint set out the note, and alleged that no part of the debt had been paid except $200 paid June 19, 1868. The answer alleged that the note had been fully paid. The case was tried three times before reaching this court. On the third trial, a jury being impaneled to try certain issues of fact, defendants' counsel claimed the right to open and close; but their demand was refused by the court. Plaintiff put in evidence the note and mortgage, and rested. An objection by the defendants to the admission of the instruments in evidence, on the ground that they were admitted by the pleadings, was overruled. The note thus put in evidence had indorsed thereon only one payment, that of $200 as admitted in the complaint. Plaintiff, as a witness for defendants, testified that her husband, Eber J. Austin, until his death in 1875, was her agent for the collection of the notes and mortgage, and of all moneys due on the sale of the prem-

ises to *Thomas H. Austin*, and that, with her consent, he used at his own discretion all moneys so collected. Defendants then introduced evidence tending to show that four payments had been made on the note, besides that admitted in the complaint, viz.: About May 1, 1866, $500; about June 6, 1866, $1,460; August 27, 1866, $1,900; November 27, 1866, $400. Testimony offered by defendants upon various subjects was rejected, and exceptions taken. A specific statement of this evidence would require more space than can profitably be devoted to it; and its general character and purposes will sufficiently appear from the opinion.

When the $200 payment indorsed upon the note was made, a receipt therefor was taken, which, except the signature, was in the handwriting of *Thomas H. Austin*. The latter admitted that he took no receipts for the other payments claimed to have been made by him, and explained the fact by testifying that the latter payments were indorsed in his presence upon the note, or upon an instrument which he then believed to be such note, while at the time of the $200 payment, the note was not present, and therefore he took the receipt.

The court refused to give the following instructions asked for by defendants: " 5. If you find that *Thomas H. Austin* made two or more payments in 1866 to apply on this note, and that one or more of such payments were actually indorsed · on the genuine note, executed when the mortgage was, then it must result that the note now produced is not the one given with the mortgage." " 8. The jury may compare and examine the signature of *T. H. Austin* on the mortgage, conceded to be genuine, with the one on the $4,000 note in evidence, for the purpose of determining whether it also is the genuine signature of *Thomas H. Austin*. And they may also examine the name of *T. H. Austin*, and Austin, in the receipt also in evidence and conceded to be genuine, with the signature on the $4,000 note in evidence, for the same purpose of determining the genuineness of the signature on the said note." " 9. If you find that the note in evidence is a forgery, and that *Thomas H. Austin* made two or more payments in the summer and

fall of 1866, it is a fair deduction from such findings that the genuine note has been suppressed to defraud defendants out of such payments."

In his general charge, the judge instructed the jury, among other things: " It is conceded by both parties that the note for $500 has been paid, and that on the 19th of June, 1868, *Thomas H. Austin* paid to Eber J. Austin $200 to apply on the $4,000 note.    These notes each bore date October 18, 1864, on which day it is conceded that they were executed.    *No question arises as to the validity of the notes and mortgage, or either of them, but it is conceded by the defendants that they were both just and valid in their inception and without infirmity of any nature whatever.*"    Defendants excepted to the sentence here italicised, on the ground that they denied the genuineness of the note produced in evidence at the trial.

After the judge had charged the jury, defendants requested " that the jury be permitted to take the $4,000 note, the mortgage, and the receipt for $200," the intent being that they might by comparison determine whether the note put in evidence was the original and genuine note.    The judge permitted the jury to take the instruments, instructing them upon that subject as follows:  " The question in respect to the validity of this note *does not at all affect the question as to whether payments have been made or not.*    The genuineness of the $4,000 note *does not affect the question as to whether payments have been made or not*, as claimed by the defendant.    The only importance that question has is this: It is claimed on the part of the defendant, that when these several payments were made to Eber J. Austin, the latter pretended to indorse them upon something which the defendant says he supposed was the note of $4,000, as given.    And, inasmuch as the note produced here bears no such indorsement, except of $200, the counsel argued to you that this is not the note that was originally given, but that Eber J. Austin has substituted another and a fictitious note, a forged note, in place of the genuine one; because the genuine one, if produced, would bear the indorsements which the defendant claims were

made in accordance with the payments. The only significance there is in that, is just what I have already said. *It does not affect the question as to whether payments were made or not made, at all;* because it is conceded here that a note for the payment of $4,000 was made, accompanying this mortgage and secured by the mortgage. It was unnecessary for the plaintiff in this action, to entitle her *prima facie* to recover, to give any evidence of the execution of the $4,000 note, forasmuch as the answer admits its execution. The defendant having claimed that when these payments were made, they were indorsed upon the note that was actually made at the time of the execution of the mortgage, or indorsed upon a paper which he supposed was the genuine note, the plaintiff introduced this note here to show that it has no such indorsements upon it. Thereupon, as was competent for the defendant to do, he puts in evidence something which tends to show, as is claimed, that this is not the genuine note at all. That is all, perhaps, that I need say on that."

The jury found that no payment had been made on the note and mortgage in suit, except the $200 admitted by the complaint. The court found the facts in accordance with the verdict, and rendered judgment against the defendants accordingly; and the defendants appealed.

For the appellants, there were briefs by *Bennett & Sale* and *J. B. Cassoday*, and oral argument by *Mr. Bennett* and *Mr. Cassoday*. They contended, amongst other things, 1. That the issue of payment being the only issue in the case, defendants were entitled to open and close (*Second Ward Savings Bank v. Shakman*, 30 Wis., 333; *Bonnell v. Jacobs*, 36 id., 59; *Elwell v. Chamberlin*, 31 N. Y., 611; *Millerd v. Thorn*, 56 id., 402; *Huntington v. Conkey*, 33 Barb., 318; *Ayrault v. Chamberlain*, id., 229; *Lindsley v. E. P. Co.*, 3 Lans., 176; *S. C.*, 41 How. Pr., 56; *Brennan v. Security L. I. Co.*, 4 Daly, 296; *Revett v. Braham*, 4 Term, 497; *Jackson v. Hesketh*, 2 Starkie's N. P., 518; 1 Archb. Pr., 169–70; Bouvier's Inst., 323, § 3043); and that in equity cases, where special issues are tried by a jury, the same rule prevails. Van Santv. Eq. Pr., 501;

1 Barb. Ch. Pr., 451; 2 Daniell's Ch. Pr., 742.  2. That as Eber J. Austin was at all times plaintiff's general agent to collect the mortgage debt, and, with plaintiff's consent, treated the mortgage and notes as his own, and was in fact the *real* owner of the land at the time of the sale to *Thomas H. Austin*, it was error to exclude evidence of his admissions in respect to payments.  He could *receipt* for such payment *in writing* at any time, and no reason appears why he could not orally admit such payment at any time.  The admissions of an agent made *during the agency, and on the subject of it, and within the scope of his authority*, are binding upon the principal, and can be given in evidence in like manner as the admissions of the principal.  *Gregory v. Parker*, 1 Campb. N. P., 394; *Emerson v. Blonden*, 1 Esp., 142; *Anderson v. Sanderson*, 1 Holt, 591; *S. C.*, 2 Starkie, 204; *Williams v. Johnson*, 1 Strange, 504; *Anon.*, id., 527; *Governor v. Baker*, 14 Ala., 652; *Winter v. Burt*, 31 id., 33; *Byers v. Fowler*, 14 Ark., 87; *Griffin v. Montgomery & W. P. Railroad Co.*, 26 Ga., 111; *Tillinghast v. Nourse*, 14 id., 641; *Mason v. Croom*, 24 id., 211; *Hynds v. Hays*, 25 Ind., 31; *Gooch v. Bryant*, 13 Me., 386; *Burnham v. Ellis*, 39 id., 319; *Bradford v. Williams*, 2 Md. Ch., 1; *Baring v. Clark*, 19 Pick., 220; *Lowry v. Harris*, 12 Minn., 255; *Burnside v. Grand Trunk Railway Co.*, 47 N. H., 554; *Page v. Parker*, 40 id., 47; *Demeritt v. Meserve*, 39 id., 521; *Batchelder v. Emery*, 20 id., 165; *Woods v. Banks*, 14 id., 101; *Runk v. Ten Eyck*, 4 Zab., 656; *Riley v. Suydam*, 4 Barb., 222; *Thallhimer v. Brinckerhoff*, 6 Cow., 90; *M'Lean v. Jagger*, 13 How. Pr., 494; *Fenner v. Lewis*, 10 Johns., 38; *Welsh v. Carter*, 1 Wend., 185; *Raiford v. French*, 11 Rich., 367; *Hayward Rubber Co. v. Duncklee*, 30 Vt., 29; *Barnard v. Henry*, 25 id., 289.  3. That the question whether the note in evidence was the one actually executed by *Thomas H. Austin*, and the question what inferences might properly be drawn from the introduction in evidence by plaintiff of a forged note, in case this were found to be forged, should have been submitted to the jury under proper instructions; that the instructions asked by defendants should

have been given; and that the actual charge of the court on that subject was grossly incorrect and misleading. *Pierce v. Northey*, 14 Wis., 9; *Hazleton v. Union Bank*, 32 id., 34; *Solita v. Yarrow*, 1 Moody & Rob., 133; *Rex v. Morgan*, id., 134, note; *Doe v. Newton*, 5 Ad. & El., 514; *Bromage v. Rice*, 7 Car. & P., 548; *Waddington v. Cousins*, id., 595; 20 Law Mag., 319, 323–4; 1 Greenl. Ev. (13th ed.), § 578. It is error to refuse a correct and proper instruction, even though the court states the law correctly in its general charge, unless it clearly appears that the appellant was not prejudiced. *Rogers v. Brightman*, 10 Wis., 55; *Chapman v. R. R. Co.*, 33 id., 629; *Zabriskie v. Smith*, 13 N. Y., 322. 4. That the verdict was contrary to the weight of evidence.

For the respondent, there was a brief by *Winans & McElroy*, and oral argument by *Mr. Winans*. To the point that the admissions of Eber J. Austin as to payments made to him as plaintiff's agent, were not admissible unless made at the time of receiving the payment, they cited 1 Greenl. Ev., § 110; 1 Taylor's Ev., 526; Story on Agency, 6th ed., §§ 134 et seq.; Wharton on Agency, § 152, note 2; *Fairlie v. Hastings*, 10 Ves., 125; *Packet Co. v. Clough*, 20 Wall., 528; *M. & M. Railroad Co. v. Ashcraft*, 48 Ala., 15; *Renard v. Turner*, 42 id., 117; *Eastern Bank v. Taylor*, 41 id., 93; *Byers v. Fowler*, 14 Ark., 87; *Rockwell v. Taylor*, 41 Conn., 56; *C., B. & Q. Railroad Co. v. Riddle*, 60 Ill., 534; *Sweatland v. Telegraph Co.*, 27 Iowa, 433; 32 id., 265, 443; *Greer v. Higgins*, 8 Kans., 519; *Murphy v. May*, 9 Bush, 33; *Franklin Bank v. Steward*, 37 Me., 519; *Cooley v. Norton*, 4 Cush., 93; *Corbin v. Adams*, 6 id., 93; *Lane v. Bryant*, 9 Gray, 245; *Stiles v. Railroad Co.*, 8 Met., 46; *Haynes v. Rutter*, 24 Pick., 242; *Runk v. Ten Eyck*, 4 Zab., 756; *Anderson v. Railroad Co.*, 54 N. Y., 334; *Luby v. Railroad Co.*, 17 id., 131; *Kelly v. Kelly*, 2 E. D. Smith, 250; *Hubbard v. Elmer*, 7 Wend., 446; *Thallhimer v. Brinckerhoff*, 4 id., 394; *Stenhouse v. Railroad Co.*, 70 N. C., 542; *Felt v. Amidon*, 43 Wis., 467; *Sorenson v. Dundas*, 42 id., 642; *Livesley v. Lasalette*, 28 id.,

38; *Smith v. Wallace*, 25 id., 55; *Ganson v. Madigan*, 15 id., 144; *M. & M. Railroad Co. v. Finney*, 10 id., 388.

ORTON, J.    All of the exceptions taken which relate to the evidence or instructions based upon the theory that the note offered in evidence was not the identical note given, and set out in the complaint, but a copy of or a substitute for it, were immaterial to the issues formed by the pleadings.    The genuineness of the note offered could only be questioned in two ways: either by the proper denial in the answer, or by objection to its introduction in evidence when offered, on that ground.    But if the paper offered as the note set out in the complaint is received in evidence without objection, and no motion is made to discard it on the ground of its being a forgery or a substitute, upon subsequent discovery, such an important question ought to be concluded, and ought not to be raised incidentally in the course of the trial, as a hypothesis or theory upon which other facts not otherwise material might be predicated.    When its alteration or want of genuineness appears upon the face of the instrument itself, the question must be raised, and the alteration explained, when it is offered and before it is received in evidence (*Low v. Merrill*, Burnett, 185; *Schwalm v. McIntyre*, 17 Wis., 232; Greenleaf on Ev., § 564); and the question of the genuineness of the note offered in this case, as being a copy of or substitute for the note set out in the complaint and the one actually given, which must be determined mainly by inspection, would seem to fall within the same rule.

In this case, the defendant *Thomas·Austin* was allowed to testify upon the question, and did not deny the genuineness of the note which had already been received in evidence, but said he had his doubts about it, and still it might be his signature, but that some portions of it did not look as if it was.    Such very uncertain and doubtful testimony would scarcely raise a suspicion of the genuineness of the paper, and we think the evidence and instructions based upon such a mere suspicion, if possibly raised, were properly excluded.

The evidence offered based upon the theory that the note

and mortgage were not the separate property of the plaintiff, but were in fact the property of her husband, the witness Eber Austin, was also immaterial to the issue and in contradiction of the fact admitted in the answer.

The other ground upon which the declarations and admissions of the witness and agent, Eber Austin, were claimed to have been admissible in evidence, that they were made while he was engaged in the business of his agency for the plaintiff, and therefore formed a part of the *res gestæ*, appears, in respect to all such evidence offered, to be untenable; because in no instance were such declarations or admissions made in connection with any act done by him as such agent, so as to come within the rule laid down by this court in *Livesley v. Lasalette and wife*, 28 Wis., 38, and numerous cases not necessary to be cited, " that the declarations of the agent, to bind and be admissible against the principal, must be made at the time of the act or transaction by the agent, and constitute a part of the *res gestæ*," and that " the power and capacity of a husband, when acting as the agent of his wife, are no greater than if he were acting as the agent of any other person." This disposes of all of the exceptions falling within these two classes, and which constitute most of the exceptions taken.

The evidence offered as to the business transactions and pecuniary circumstances of the agent Eber Austin, as tending to prove that he must have received the payments claimed to have been made to him as such agent, we think was properly excluded, as being too remote to have any legitimate bearing upon the question of such payments; and so also the testimony of Mrs. Abby Thompson as to seeing the wife of *Thomas Austin* leave the room and go into the kitchen for ink, etc.; and that of Johnson showing that *Thomas Austin* borrowed money of him in the presence of Eber Austin, the agent, for the purpose of making payment on the note. The evidence offered to contradict the evidence of Eber Austin, the agent, was properly excluded, if for no other reason, because the statements sought to be contradicted were not connected with any act done by him as such agent, and were irrelevant and immaterial, and

could not be made the foundation of this method of impeachment. Greenl. on Ev., § 462.

This case cannot be treated as a case at law tried with a jury, although certain special issues were submitted to a jury. It is a case in equity, in which the judge, as the chancellor, notwithstanding the verdict of the jury on these special issues, must after all find the facts for himself, and duly consider all the evidence, and render such judgment as justice and equity demand. In such a case, slight departures from the strict and technical rules which govern actions at law upon the trial, which do not affect the substantial justice of the judgment, will be disregarded. The supposed advantage of having the opening and closing argument, in a case at law, is not apparent upon the hearing of a cause in chancery; and we cannot presume in this case that any substantial advantage has been gained or lost to either party, or that the judgment of the court was at all affected, by the order in which the argument of the learned counsel was allowed to be opened and closed; and we do not think it manifest that any injustice was done by the ruling of the circuit court upon this question; and unless it is so manifest, it is no ground of error, even in actions at law. *Marshall v. The American Exp. Co.*, 7 Wis., 1.

Upon the questions of fact raised upon this appeal, we have carefully examined the evidence upon which the various payments claimed to have been made upon the note and mortgage by the defendant *Thomas Austin*, depend, and by which the learned counsel of the appellants claim they were proved to have been made.

The testimony of the defendant *Thomas Austin*, and that of the agent and witness Eber Austin, the only persons having positive knowledge upon the subject, are in direct conflict; and, to arrive even proximately at the truth between them, resort must necessarily be had to corroborating evidence and circumstances, if there be any, which should have weight upon one side or the other, and make a clear preponderance.

In respect to all of the alleged and contested payments, except the one claimed to have been made on the 27th day of

August, 1866, at the Rock County National Bank, of $1,900, we are unable to find any such preponderance of the evidence against the findings of the circuit court.

With regard to that payment, while conceding the superior advantages and facilities of the learned judge who tried the case, and of the jury which rendered the special verdict, by hearing and seeing the witnesses and observing their manner and appearance upon the stand, to form a correct opinion of their credibility, we are forced, by the evidence before this court, to the conclusion that there is a clear preponderance of the evidence in favor of the fact of such payment.

It appears very certain that Eber Austin was in the city of Janesville on that day; and that *Thomas Austin* at that time had a deposit in that bank of the sum of $1,900, of which he drew out on that day the sum of $1,875. *Thomas Austin*, the defendant, testified that he paid Eber Austin, the agent of the plaintiff, within that bank, on that day, the sum of $1,900, to apply upon the note and mortgage. Eber Austin, in his testimony, denied such payment, and that he was in the bank on that day. Chester M. Crosby, the teller of the bank, testified that on that day *Thomas Austin* drew out of the bank, and that as such teller, he paid him, the sum of $1,875; that two or three men were in the bank with *Thomas Austin*, and he thinks one was his brother, and he remembers their standing along the side of the counter, counting the money and talking together. Alexander McGregor testified that he saw *Thomas* and Eber Austin together in the Rock County Bank, at the end of harvest of that year; that he saw four or five packages of bank bills between them, they standing by the counter opposite the teller's paying desk, and saw Eber Austin put the money in his pocket. I. P. Cook testified that he was acquainted with Eber Austin; that on Monday, the latter part of August, 1866, he went into the Rock County Bank; that *Thomas Austin* and Eber Austin were standing at the right of the paying teller's window, within two or three feet of each other, with some money in bank bills between them, in several packages, with slips around them, as if just drawn from

the bank; that *Thomas* said he was making a heavy payment to his brother; and that there was another man in the bank. David W. Austin testified that he saw *Thomas* and Eber Austin go into the bank together on that day. Freeman Bacon testified that he saw *Thomas* and Eber Austin together in the street and go into the bank together on that day, and that he saw the witness I. P. Cook go into the bank also.

This is very strong corroboration of the testimony of *Thomas Austin* that this payment was made; and it was certainly incumbent upon Eber Austin to explain this transaction, which he does not seek to do, but denies it altogether. These corroborating witnesses appear to be impartial and disinterested, and there is no good reason why their testimony should not be believed.

We think that there is a clear preponderance of the evidence establishing this payment, and that it should have been allowed as a credit upon the note in addition to the $200 indorsed thereon.

This cause has been tried three several times, and it is presumed that all the evidence possible has been obtained; and, the principal witness of the plaintiff and her agent, Eber Austin, having died before the last trial, we do not think another trial ought to be awarded upon the reversal of the judgment on this question of fact.

*By the Court.* — The judgment of the circuit court is reversed, with costs, and the cause remanded with directions to the circuit court to render the proper judgment for the moneys due upon the note and mortgage, with the proper deduction of the $200 indorsed as paid thereon, and of the sum of $1,900 as paid on said note and mortgage on the 27th day of August, 1866.

RYAN, C. J., took no part.