## SNYDER vs. VAN DOREN, imp.

PROMISSORY NOTE. *(1, 2) Effect of additional signatures on liability of joint maker. (3) Affidavit to put plaintiff on proof of signature.*

1. If a note in blank signed by one person as maker for the accommodation of another to whom it is delivered, is afterwards signed by a third person as joint maker, it will probably be void in the hands of one who takes with knowledge that, at the time of executing it, the first signer expressly stipulated against such further signature.
2. But where the note, when signed by the first maker, contained, among other blanks, one for words making it a joint or several obligation, its delivery to the person for whose accommodation it was made, without any express stipulation against further signature, is held to have authorized such person to procure it to be signed by other parties as joint makers with the first.
3. In an action on such a note, the first signer made an affidavit denying that he ever *executed* the note, but not denying his *signature* thereto. *Held*, not such an affidavit as is required by the statute (R. S. 1858, ch. 137, sec. 92) in order to put plaintiff to proof of the signature. "

APPEAL from the Circuit Court for *Winnebago* County.

Action on a promissory note of A. J. Van Doren, J. D. Van Doren, and *I. O. Van Doren.* Plaintiff had a verdict and judgment against all the defendants; and the defendant *I. O. Van Doren* appealed from the judgment.

The facts upon which the question of the appellant's liability turned, are stated in the opinion.

*H. B. Jackson*, for the appellant:

1. Any material alteration of a note, whether for the better or for the worse, terminates the liability of the maker not consenting to it. *Master v. Miller*, 4 Term, 320; *S. C.*, 1 Smith's L C., 6th Am. ed., Pt. 2, 141. Such for example is the effect of an alteration in the time of payment, whether it shorten or extend the time. *Smith v. Weld*, 2 Pa. St., 54; *Low v. Merrill*, 1 Pinney, 340. The addition of the name of a third person as maker is such an alteration of the note as will vitiate it.

*Gardner v. Walsh*, 5 El. & Bl., 82; *S. C.*, 32 Eng. L. & E., 162; *Chappell v. Spencer*, 23 Barb., 584; *McCaughey v. Smith*, 27 N. Y., 41–44, and cases there cited; *Bowers' Adm'r v. Brigg*, 20 Ind., 139; *Bank of Limestone v. Penick*, 5 Mon., 25; Chitty on Bills, ed. of 1854, p. 215; Byles on Bills, Law Lib., 4th Series, vol. 46, p. 247; Story on Prom. Notes, § 408 a, and note. If, after the completion of the note, J. D. Van Doren had removed his own name as maker, making the note that of the appellant only, it would hardly be contended that this was not a material alteration. But it is no less an alteration of a note to *add* the name of a joint maker, than to remove one. The utmost extent of authority to bind appellant, vested in any one by his signing the blank note with J. D. Van Doren and intrusting it to him, was *to fill up the ordinary blanks left unfilled*, so as to make it a perfect joint note of the two signers. He never consented, therefore, to be one of *three* obligors to any amount, for any purpose, or under any circumstances; and he cannot be charged with any such joint obligation without his consent. He could not be so charged even if his objection to a third joint obligor were a mere whim. But one willing to be a joint obligor with A., may reasonably be unwilling to be a joint obligor with A. and B. If he pay the note, A. may be compelled by the law of contribution to pay him back one-half the amount, in the one case; while in the other case A. can be compelled to pay only one-third, and he is forced to look to B. for the other third. 2. It is immaterial *when* or *by whom* the alteration was made, provided it was without appellant's consent. " A material alteration in commercial paper destroys the nonconsenting party's liability, although the alteration was made before the paper came into the payee's hands, and was not known to him." 2 Parsons on Con., 6th ed., 716; *Wood v. Steele*, 6 Wall., 81, 83; *Holland v. Hatch*, 11 Ind., 497; *Schwalm v. McIntyre*, 17 Wis., 232; *Rounsavell v. Pease*, 45 id., 506.

Snyder vs. Van Doren, imp.

For the respondent, there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber:*

1. The signing of a blank note, such as was shown in this case, imports a grant of authority to the holder to fill the note out for any sum, and with any terms as to time, place and conditions of payment. And although the parties so signing may prescribe limits to the holder, a *bona fide* transferee from him, who takes the instrument in ignorance of such limitation of his authority, may recover upon it, although in filling it out the authority has been exceeded. 1 Daniel on Neg. Inst., § 142; Story on Bills, § 222; Parsons on Bills, 109; *Russel v. Langstaffe*, 2 Doug., 514; *Mich. Ins. Co. v. Leavenworth*, 30 Vt., 11; *President, etc., v. Kimball*, 10 Cush., 373; *Ives v. Farmers' Bank*, 2 Allen, 236; *Redlich v. Doll*, 54 N. Y., 238; *Schryver v. Hawkes*, 22 Ohio St., 308; *Orrick v. Colston*, 7 Gratt., 189; *Bank of Pittsburgh v. Neal*, 22 How., U. S., 107; *Davidson v. Lanier*, 4 Wall., 457. · 2. The appellant cannot escape liability on the ground that the addition of the name of A. J. Van Doren was a material alteration of the note. (1) It is now settled that the addition of a name to a note or bill is not a material alteration. 2 Daniel on Neg. Inst., §§ 1388–9; Parsons on N. & B., 559; *Brownell v. Winnie*, 29 N. Y., 400; *McCaughey v. Smith*, 27 id., 39; *Miller v. Finley*, 26 Mich., 249. (2) The name was added before delivery. It was not in fact an alteration, because the appellant, by signing a note in blank for the purpose of enabling his brother to negotiate it, authorized him to take any steps necessary to that end. (3) The appellant, by his carelessness in executing the note and putting it in circulation in such form as to give the holder an opportunity to add another name, is estopped from urging the alleged defect as against the plaintiff, who took the instrument in ignorance of the alteration, if there was one. 2 Daniel, § 1405; *Van Duzer v. Howe*, 21 N. Y., 538; *Garrard v. Hadden*, 67 Pa. St., 82.

Snyder vs. Van Doren, imp.

TAYLOR, J.   This action is brought to recover the amount of a promissory note bearing date June 5, 1875, payable to the plaintiff or bearer, two years after date, with interest at ten per cent. per annum.   The note on its face purports to be signed by all the defendants in the following order:

A. J. VAN DOREN

J. D. VAN DOREN

I. O. VAN DOREN.

The note is the joint note of the makers.

The evidence shows that the appellant, *I. O. Van Doren*, and J. D. Van Doren, signed the note in blank something over a year before the date of the same.   The note when signed by the appellant was a printed form, blank as to date, amount, time of payment, rate of interest and payee, and there was also a blank to be filled for the purpose of making it a joint or several note.   The evidence also shows that the note was so signed in blank by the appellant for the purpose of enabling J. D. Van Doren to raise money on the same for his own use, and that the appellant was simply an accommodation maker.   It also shows that before the note was negotiated or delivered to the plaintiff, it was filled up and signed as it appeared at the trial; and for the purposes of this case it must be held that the plaintiff knew that the name of A. J. Van Doren was not signed to the note at the time it was signed by the appellant and J. D. Van Doren.   The evidence also shows that there was no express authority given by the appellant that the note might be so signed before the same was negotiated.

Upon this evidence the learned counsel for the appellant insists that there can be no recovery against the appellant. Counsel admits that, by signing the note in blank for the accommodation of J. D. Van Doren, the appellant authorized him to add the date, amount, time of payment, rate of interest and name of payee, to make it a joint and several or joint

or several note, and to make it negotiable or otherwise; but denies that by so doing he authorized him to procure any third person or persons to sign the same as joint or several makers with him.

The real question to be determined in this case is, whether a person who signs a note in blank as maker, for the accommodation of the person to whom he delivers it, must be held, as between him and a *bona fide* holder for value, to have impliedly authorized the person to whom the same is delivered, to have the same signed by another party or parties as joint makers with him. We think, both upon principle and authority, that the person for whose accommodation such note is signed, may, before the same is negotiated by him, procure the same to be so signed by another person or persons, without vitiating such note in the hands of a *bona fide* holder. If the party signing the note in blank expressly stipulates that the same shall not be signed by any other person, there is probably no doubt but that the note would be void in the hands of any one who took the same so signed by another, knowing that the accommodation maker had expressly stipulated against such further signature.

We think the rule is, that a party who signs a note in blank makes the person to whom it is delivered for negotiation his agent, not only for the purpose of filling the blanks in the note, but to do any other thing necessary to make the note so signed accomplish the purpose for which it was intended, with the limitation that he shall not insert in such note any contract or stipulation not usually found in a promissory note. It was not even argued by the learned counsel for the appellant, that in such case the party holding the note could not, for the purpose of negotiating the same, have it indorsed by a third person or persons, or have a third person guaranty the payment of the same by a written guaranty on the back thereof; and it seems to us that if he may do that,

there is no objection to his accomplishing the same purpose by having such third person sign the same as a joint or several maker.

It is not a question of alteration of the note, but a question of implied agency on the part of the holder. The note in the hands of the holder, before negotiation by him, is not a binding contract between him and the accommodation maker. To have any validity as a contract, it must be negotiated by the holder; and until such negotiation takes place, the contract is imperfect, and may be filled up and perfected in any manner, by such holder, which is not inconsistent with the implied agency given by the accommodation maker. There can be no doubt that the holder might fill up the same with an amount, date and time of payment, and then alter the same in either of these respects before he negotiated the same, without vitiating the note in the hands of a *bona fide* holder. The person to whom the same was delivered in blank being agent of the maker for the purposes above specified, any alteration made by him in that respect, before negotiation, would no more affect the validity of the note than if made by the maker himself. Chitty on Bills of Exchange, 215. The cases cited below show the extent of the implied agency of the party to whom a bill of exchange or promissory note, signed in blank, is delivered. There are two classes of cases illustrative of the subject. First, the cases in which a party writes his name on a piece of blank paper, and delivers it to another person with intent that such other person may use such name as the drawer of a bill of exchange or maker of a promissory note, or where the name is so written as to indicate that the writer is to be the indorser of a promissory note or the acceptor of a bill of exchange, and with the understanding that a promissory note or bill of exchange may be written on such blank paper. In such cases, the courts hold that a note or bill of exchange, for any amount, in favor of any person, and payable at any time, may be written over such name, and, when

negotiated, a *bona fide* holder may recover on the same; and that in such case it is no defense that the party to whom the same was delivered in blank, exceeded his actual authority. The same rule applies in the case of a person signing as an indorser or acceptor. In the case of *Russel v. Langstaffe,* 2 Douglas R., 514, Lord MANSFIELD says: "The indorsement on a blank note is a letter of credit for an indefinite sum. The defendant said, 'Trust Gally to any amount, and I will be his security.' It does not lie in his mouth to say the indorsements were not regular." In the case of *Violett v. Patton,* 5 Cranch (U. S.), 142, which was the case of an indorsement upon a blank piece of paper, Chief Justice MARSHALL says: "The objection certainly comes with a very bad grace from the mouth of Violett. He indorsed the paper with the intent that the promissory note should be written on the other side; and that he should be considered as the indorser of the note. It was the shape he intended to give the transaction; and he is now concluded from saying or proving that it was not filled up when he indorsed it. It would be to protect himself from the effect of his promise by alleging a fraudulent combination between himself and another to obtain money for that other from a third person."

The case of *Putnam et al. v. Sullivan et al.,* 4 Mass., 45, was a case of indorsements made upon blank paper with intent that they should be used by the person with whom they were left, in a certain specified way, and a third person, by fraudulent representations, procured some of these blank indorsements from the person in whose custody they were left, and wrote his own promissory note, payable to a third person, on the blank paper, and negotiated such notes, with such blank indorsements on the back of the same; and it was held that the holders who purchased the same for value could recover on the same against the indorsers. See also *Collis v. Emett,* 1 H. Bl., 313. Daniel on Negotiable Instruments, § 142, speaking of such signatures in blank, says: "It is a

settled principle of commercial law, that when such instruments are afterwards completed, by the holder of such blanks, to whom they are loaned, such parties become as absolutely bound as if they had signed them after their terms were written out; and further, that the presence of their names upon blanks purports an authority granted to the holder to fill them for any sum, and with any terms as to time, place and conditions of payment; and that, although the party may prescribe limits to the holder, a *bona fide* transferee from him, ignorant of such limitation of authority, when he takes an instrument which has exceeded it, may recover upon it."

Story on Bills, § 222, lays down the same rule. The law, as declared in the foregoing cases, was commented upon and approved by this court in *Walker v. Ebert*, 29 Wis., 194.

The second class of cases are those in which the party sought to be charged as maker, indorser or acceptor, signs or indorses a note or bill of exchange in blank, either written or printed, but not filled up so as to make it a perfect note or bill at the time it is so signed. In these cases, the same rule as above stated is applicable, with, perhaps, the limitation that no material alteration can be made in those parts of the note or bill which were printed or written thereon at the time it was signed or indorsed in blank. In cases of this kind, the rule as to the extent of the implied agency of the person to whom the same is delivered in blank, is very clearly and briefly stated in *Bank v. Neal*, 22 How. (U. S.), 107, as follows: "When a party to a negotiable instrument intrusts it to the custody of another, with blanks not filled up, whether it be for the purpose to accommodate the person to whom it was intrusted, or to be used for his own benefit, such negotiable instrument carries on its face an implied authority to fill up the blanks and perfect the instrument; and, as between such party and innocent third parties, the person to whom it was so intrusted must be deemed the agent of the party who committed such instrument to his custody; or, in other words, it is the act of

the principal, and he is bound by it." The same rule has been laid down in nearly every case in which the question has been raised. *Mitchell v. Culver*, 7 Cow., 336; *Bank v. Kimball*, 10 Cush., 373; *Montague v. Perkins*, 22 Eng. L. & Eq., 516; *Davidson v. Lanier*, 4 Wall., 457; *Orrick v. Colston*, 7 Grat., 189; *Schultz v. Astley*, 29 Eng. C. L., 414; *Schryver v. Hawkes*, 22 Ohio St., 308; *Redlich v. Doll*, 54 N. Y., 238; *Cruchley v. Clarance*, 2 M. & S., 90; *Crutchly v. Mann*, 5 Taunt., 529; *Ives v. Bank*, 2 Allen, 236; *Insurance Co. v. Leavenworth*, 30 Vt., 11; *Douglass v. Scott & Fry*, 8 Leigh, 43; *Elliott v. Chesnut*, 30 Md., 562; *Brummel v. Enders*, 18 Grat., 897; *Bell v. Bank*, 7 Blackf., 458; *Holland v. Hatch*, 11 Ind., 500, 501; Daniel on Negotiable Instruments, §§ 143, 144; Story on Bills of Exchange, § 222, and notes.

These cases, and many more which might be cited, fully establish the rule as above stated; and they all hold that the implied agency of the person to whom the note or bill signed in blank is delivered, is of the most general and absolute nature, and that he may bind such signer to any extent, so long as he does not change the nature of the instrument indicated by the blank so signed, or erase or change the parts of the instrument which were written or printed at the time of such signing. In the great number of cases to be found in the books upon the subject, I have been unable to find one which presents the exact point made in the case at bar, and but one where a similar question was determined, and that, we think, is conclusive against the position taken by the appellant in this. In the case of *Schultz v. Astley*, 29 Eng. C. L., 375, it was held by the common pleas, TINDAL, Chief Justice, delivering the opinion, that when the defendant wrote an acceptance on a blank piece of stamped paper, and delivered the same to H. to raise money for the use of the acceptor, and a bill of exchange was afterwards drawn upon such blank by C., a stranger to H., as drawer, and indorsed by C., the defendant was liable to a *bona fide* holder of the

bill for the amount of the same. In the statement of the case it is said, " that it was objected that the bills purporting to be drawn by C., having been drawn by a stranger to the acceptor, after the acceptor's and drawer's name had been written in blank, were not drawn according to the custom of merchants, and were therefore void." I do not think, however, that the evidence showed that any other name than C.'s had ever been written on the bill as acceptor.

Chief Justice TINDAL, in passing upon this objection, says: " The second ground of nonsuit rests upon the invalidity of the two bills of exchange. As to the bill drawn by Clissold, the objection is that, admitting a party must be bound by his acceptance written on a blank piece of stamped paper to the extent of such sum as the stamp will cover, yet that this giv- ing of a blank acceptance authorizes only the party to whom it is given to draw the bill; or, at all events, does not author- ize Clissold, a stranger, to sign his name on the same blank piece of paper as drawer, the bill itself being subsequently written upon the paper by some other person. No authority has been cited to us for any such restriction of the general doctrine above admitted; nor can we see any distinction in principle, when the bill has passed into the hands of third persons, between holding the acceptor liable to a given amount, when the bill is afterwards drawn in the name of the party who has obtained the acceptance, and when it is drawn by a stranger who becomes the drawer at the instance of the party to whom the acceptance is given. The blank acceptance is an acceptance of the bill which is afterwards put upon it; and it seems to follow from the doctrine of Lord MANSFIELD in Russel v. Langstaffe, 2 Douglass, 514, that it does not lie in the mouth of the acceptor to say that the drawing or indors- ing of the bill was irregular. The acceptor was a stranger to the party to whom he handed over his blank acceptance, and, as all that he desired was to raise the money, it could make no difference to him, either as to the extent of his liability or in

any other respect, whether the bill was drawn in the name of one person or another."

The cases cited by the learned counsel for the appellant do not conflict with the rule as above stated. They are all cases in which the note or contract was perfect when the signature of the party objecting to its validity was affixed thereto, except the case of *Holland v. Hatch et al.*, 11 Ind., 497; and in that case there was a stipulation inserted in the note, signed in blank, which was not usual, and was outside of the ordinary obligations contained in such instruments. In none of these cases, except the one in Indiana, was there any question as to the extent of the power of the party for whose benefit a note or bill of exchange was executed in blank, to fill up the blanks or alter the same before negotiation. They all present the simple case of a party who had placed his name to a perfect contract in all its parts, and who consequently placed no trust in and gave no agency to the party holding his signature to such contract, to shape or perfect the same for him. At the time he gave his signature, he is supposed to have understood the exact contract he signed, and by which he was to be bound, and there was therefore neither an express nor an implied agency given to the party to whom such contract was delivered, to alter or change the same. In the case of *Holland v. Hatch*, *supra*, the court recognized the doctrine of the cases above cited, but held the party who executed the note in blank not bound, because the party to whom the same was delivered added to the note, when filled up, a clause waiving the appraisement laws. In the opinion, the court says: " The legal effect of the instrument, as signed by the defendant, was to permit the holder to fill up all the blanks as to sums, times of payment, payees, etc., as he might choose, and make the bills complete; but more than this neither Tyner nor any one else had the right to do; and we think the insertion of the clauses waiving the appraisement laws, either by Tyner or any other holder, so essentially changes the character of the bills as to

render them void." In this case the holders knew that the bills were signed by the defendant in blank, and that the blanks, when so signed, did not contain the clause waiving the appraisement laws. Had the bills been filled up, and the appraisement clause inserted, by the person to whom the blanks were delivered, before he negotiated them, and had he then negotiated them to a *bona fide* holder for value, having no knowledge that the defendant had executed them in blank, the decision would probably have been the other way. See *Putnam v. Sullivan*, 4 Mass., 45, and *Schryver v. Hawkes*, 22 Ohio St., 308. The decision in 11 Indiana simply holds that a party who executes a note or bill in blank, does not thereby authorize the person to whom he delivers the same, to insert any stipulations or clauses therein not necessary to perfect the note or bill, or which are not usually inserted in such instruments.

We can see no reason why a party who signs his name to a blank note or bill, and delivers the same to a third person, for the purpose of enabling such person to raise money thereon for his own use, should be heard to object to the payment of such note or bill, because it is afterwards, and before the same is negotiated, signed by another person or persons. By his signature he is, in law, presumed to have intended to hold himself bound to any person who might thereafter receive the same for value, for any sum, payable at any time and place, and to any person or persons, at the discretion of the party to whom he delivers the same for negotiation. In the language of Chief Justice TINDAL, above quoted: "It can make no difference to him, either as to the extent of his liability, or in any other respect, whether the bill or note be signed by another person or not." He certainly cannot be injured thereby. As he has given the credit of his name for the purpose of enabling the person to whom he gives it to raise money upon the instrument to which it is affixed, he must be held to have authorized such person to make use of the same in any way

which may be reasonably necessary to accomplish the purpose for which it was given, with the limitations above noticed, that he shall not change the nature of the contract he has signed, nor increase the liability which, in law, he has assumed by such signature. All the cases hold that a note signed in blank may be filled up with the name of any person as payee, and may be made payable to order or bearer, and consequently may be indorsed by the person to whose order it is made payable, either at or before its negotiation; and if the holder may make the instrument available for the purpose for which it is given, by procuring the indorsement of a third person, which will give the instrument greater credit, there does not seem to be any good reason why such greater credit may not be given to it by adding the name of another maker. It does not seem to us that the law will permit this defendant, who has voluntarily signed the note in controversy, and voluntarily made himself liable to the holder for the full amount thereof, to say that he will not pay the same because some other person has also bound himself for its payment.

This case does not raise the question as to what might be the effect of procuring an additional accommodation maker to a note which had been signed in blank, at the same time, or by mutual agreement, by two or more joint accommodation makers, who, in case of payment by one or more of them, would be liable to contribution as between themselves; and this decision is limited by the facts to the case of a single accommodation maker signing alone, without any express agreement that the same shall be signed by any other; and in such case we hold that, unless expressly prohibited by the person signing as such maker, the holder to whom the same is delivered may, before negotiation, procure the same to be signed by another accommodation maker, or makers, without vitiating the note or bill, and that the same may be enforced by a *bona fide* holder for value, even though he knew that the same had been so signed in blank by the party against whom he seeks

to enforce the same.   Mere knowledge of the fact that the bill was signed in blank by the defendant, will not defeat a recovery on the same, even when the person to whom the same was delivered has exceeded his authority or appropriated the note or bill to a purpose for which it was not intended.   To defeat a recovery in case of misappropriation or excess of a uthority expressly given, knowledge of such misappropriation, or the limited authority, must be brought home to the holder who seeks to recover on the same.   Story on Bills of Exchange, § 222, and notes; Daniel on Negotiable Instruments, § 143, and notes.

In view of the above opinion as to the liability of the appellant upon the note upon which this action was brought, there was no litigated fact to submit to the jury, and therefore no right on the part of the defendant to demand a special verdict; and the court was clearly right, therefore, in directing a verdict in favor of the plaintiff for the amount of the note and interest.  *Furlong v. Garrett*, 44 Wis., 111–125. The signature of the defendant to the note was not in issue on the trial, for the reason that the defendant had not made an affidavit denying the same as required by sec. 92, ch. 137, R. S. 1858.   The affidavit of the appellant made and found in the record denies that he executed the note set out in the complaint; but he does not deny his signature to the note. *State v. Homey et al.*, 44 Wis., 615; *Schwalm v. McIntyre*, 17 Wis., 232.   These cases hold that the statute requires a denial of the signature in order to put the party to the proof of the same.   This is undoubtedly the construction which should be given to it; otherwise it would require every defendant who desired to defend against a written contract purporting to be signed by him, to make an affidavit denying the execution thereof, no matter what the ground of defense.   It would apply equally to a defense on the ground of fraud, duress, or that the contract which he did sign had been altered after signature.   In the case cited from the 17th Wis., it was held that

the latter defense could be made without making the affidavit required by statute; and undoubtedly the other defenses above named could be made without making the statutory affidavit. The only office of the statutory affidavit is to put in issue the signature and nothing else; and that was not done by the affidavit in this case. But if the signature of the appellant was in issue, we do not think there was sufficient evidence on that issue to sustain a verdict in favor of the defendant; and the court below was right, therefore, in taking it from the jury.

*By the Court.*— The judgment of the circuit court is affirmed.