NEWELL, Appellant, vs. CLAPP and another, Respondents.

*September 9 — September 28, 1897.*

*Administrator's liability for sale of diseased cattle: Agency: Evidence, best and secondary.*

1. Before secondary evidence of the contents of a letter can properly be admitted, the party offering it must satisfactorily account for his failure to produce the letter itself in court.

2. Proof that a certain person had prepared a catalogue of the cattle belonging to the estate of a deceased person, and that he answered

Newell vs. Clapp and another.

plaintiff's letter addressed to such estate in relation to such cattle, and sent one of his catalogues, and that he afterward received money for the purchase of the cattle selected by the plaintiff and bid them in for him at the administrators' sale, *held* not to be sufficient to establish that he was agent for the administrators.

3. In order to hold the administrators personally liable in *tort* at common law for false representations, made by such alleged agent to the plaintiff prior to the sale of such cattle under the order of the probate court, as to the condition and quality of the cattle sold to such plaintiff, he must, at least, show that such agent was specially authorized by them to make such representations, or else that he was, at the time, authorized to make such sale and that he made it by false representations in pursuance of such authority.

4. In order to render administrators of a deceased resident, who, by virtue of an order of the proper probate court, sold cattle from a herd belonging to the estate which afterward proved to be infected with *tuberculosis,* personally liable for injuries thereby caused to the purchaser, it is not sufficient to prove that they knew that such disease had shown itself in the herd at some former time, if at the time of the sale they had reason to believe and did believe that the disease had been entirely eradicated.

5. The provisions of secs. 1–6, ch. 467, Laws of 1885 (sec. 1492$a$, S. & B. Ann. Stats.), which make it a penal offense for any person to bring infectious or diseased animals into the state, or, after a proclamation by the governor, to receive in charge and transport and convey the same within the state, and also make the offender liable to persons injured thereby, do not apply to administrators who merely, under an order of the probate court, sell cattle of the estate which are so infected; nor are they liable under sec. 7, unless they have been *convicted* of acts or omissions by said chapter prohibited.

APPEAL from a judgment of the circuit court for Racine county: FRANK M. FISH, Circuit Judge. *Affirmed.*

The case is stated in the opinion.

For the appellant there was a brief by *Smieding & Smieding*, with *Wallace Ingalls*, of counsel, and oral argument by *William Smieding, Jr.*, and *Wallace Ingalls*. They argued, among other things, that the evidence showed that Bray was the agent of the defendants, and they were chargeable

with knowledge of the condition of the animals sold to the plaintiff, of which such agent had notice. *Congar v. C. & N. W. R. Co.* 24 Wis. 157; *Owens v. Roberts,* 36 id. 258; *Jeffrey v. Bigelow,* 13 Wend. 518; Mechem, Agency, § 718, and cases cited. The defendants were liable for the fraud and deceit of their agent within the scope of his apparent authority. *Law v. Grant,* 37 Wis. 548; *McKinnon v. Vollmar,* 75 id. 82. There was no evidence that the disease was ever eradicated from defendants' premises or that defendants had any reason to believe that it had been, and the court erred in submitting the case to the jury on the theory that there was. *Nelson v. Dutton,* 51 Mich. 416; *Jones v. Matthieson,* 2 Dak. 523; *Stutz v. C. & N. W. R. Co.* 69 Wis. 312. The statute (sec. 1492a, S. & B. Ann. Stats.) makes the party guilty of selling an infected animal liable for the injury caused thereby, upon proof of such sale.

For the respondents there was a brief by *Cavanagh & Fisher,* attorneys, and *J. V. Quarles,* of counsel, and oral argument by *Mr. James Cavanagh* and *Mr. Quarles.*

CASSODAY, C. J. This action was commenced April 25, 1896. The plaintiff, a resident of St. Croix county, alleged that, being engaged in the occupation of farming and producing dairy products in June, 1890, and owning a large herd of healthy dairy cattle, free from disease, and buildings and creameries in connection with her business, she purchased from the defendants, at a sale by them widely advertised, two head of thoroughbred Guernsey heifers, for dairy and breeding purposes, for $175, which she paid therefor; that she introduced the two heifers into her said herd, believing them to be free from disease; that at the time of said sale, and while in the possession of the defendants, said heifers so purchased were affected with, and exposed to, a contagious disease known as "tuberculosis;" that the defendants well knew and had reason to suspect that at and

before the time of sale the heifers so purchased by the plaintiff were affected with, and had been exposed to, said contagious disease; that said contagious disease was communicated to the plaintiff's herd of cattle by the two heifers so purchased, whereby the plaintiff had from time to time since that time lost forty head of said herd, including the two heifers so purchased, by death from said disease; that in 1894 the plaintiff for the first time learned the true nature of said disease, and then for the first time learned that the heifers so purchased were at the time she received them affected with, and had been exposed to, "tuberculosis,"— and prayed $6,000 damages.

The defendants answered to the effect that March 1, 1890, one Isaac J. Clapp, of Kenosha, died intestate; that the defendants were, April 17, 1890, duly appointed administrators of his estate, and qualified as such, and, upon due notice, in all things fully administered and settled the estate; that after the payment of the debts and funeral expenses of the said deceased, and the charges and expenses of administering and settling said estate, the same had been duly assigned and distributed to the heirs of said deceased by final order and judgment of the county court of Kenosha county, March 26, 1891; that, among other personal estate, the deceased left a large number of thoroughbred Guernsey cattle, including the two thoroughbred Guernsey heifers in question; that upon due notice the defendants, as such administrators, sold said cattle June 25, 1890, on the farm of said deceased at Kenosha, at public auction, to the highest bidder, for cash; and that the two heifers were purchased at said sale by one Bray, who sold the same thereafter to one P. F. Newell. The answer further denied that the two heifers, or either of them, were at the time of sale, or before, affected with, or exposed to, any such contagious disease, or that the defendants, or either of them, knew or had any reason to suspect that either had been affected with, or ex-

posed to, such disease; that in making such sale they acted merely as administrators.

At the close of the testimony on the part of the plaintiff the court granted a nonsuit as to the defendant *Brown*, and at the close of all the testimony the jury returned a verdict in favor of the defendant *Clapp*, and from the judgment entered thereon the plaintiff brings this appeal.

1. It appears from the record, in effect, that P. F. Newell, referred to in the defendants' answer, is the son of the plaintiff, who is a widow, and had the general management of her farm in 1890; that he knew of Isaac J. Clapp before his death, and corresponded with him with a view of buying cattle from him, but did not buy any during his lifetime; that he first heard that there was to be an administrators' sale of the cattle belonging to the Clapp estate, June 25, 1890, in May, 1890; that he obtained such information from a dairyman's paper; that his first inquiry in regard to the sale was a letter addressed to the estate of I. J. Clapp; that he received in reply a letter from W. L. Bray, and a catalogue giving the number and description of the cattle; that he picked out those he desired to purchase as Nos. 34 and 36, and offered $100 for one and $75 for the other, and sent the amounts forward to Bray by draft payable either to Bray or the estate of I. J. Clapp; that neither he nor his mother had then seen either of the defendants or Bray, but purchased the cattle by such correspondence. The plaintiff contends that Bray was the agent of the defendants in making the sale, and that Bray knew of the diseased condition of the heifers at the time of the sale. The plaintiff claims that such knowledge was brought home to Bray by a letter written to him by the plaintiff's witness Charles L. Hill about a week prior to the sale. Bray was not required by the plaintiff to bring and produce the letter upon the trial, and it was not produced, and the failure to have it present in court was not satisfactorily accounted for; but error is

assigned because the court rejected parol evidence as to the contents of the letter. Such evidence was not the best evidence, and hence was properly rejected. Before such secondary evidence could be properly admissible, it was necessary for the plaintiff to lay the requisite foundation for its introduction. 1 Greenl. Ev. §§ 82, 88; *Perrin v. State*, 81 Wis. 135; *Diener v. Schley*, 5 Wis. 483; *Orr v. Le Clair*, 55 Wis. 93. This she failed to do. So there is no evidence that Bray knew, or had good reason to believe, that the heifers were so diseased at the time of the sale. Besides, the evidence does not establish Bray's agency in making the sale. The mere facts that he had previously prepared the catalogue, that he answered the letter of the plaintiff's son and sent him a catalogue, and that he received the money from the plaintiff and bid in the heifers for her, would seem to be insufficient to establish that he was the agent of the defendants in making the sale. *Wells v. Am. Exp. Co.* 44 Wis. 349; *Austin v. Austin*, 45 Wis. 523; *Randall v. N. W. Tel. Co.* 54 Wis. 143, 144; *Stone v. N. W. Sleigh Co.* 70 Wis. 587. The defendants sold the heifers to Bray for the plaintiff, as administrators, under authority from the court. To hold them liable in tort at common law for prior false representations of Bray to the plaintiff's son as to the condition and quality of the heifers, it should at least be made to appear that he was especially authorized to make such representations, or else that he was at the time authorized to make such sale, and made it by false representations in pursuance of such authority.

2. We perceive no error in charging the jury "that, although *Mrs. Clapp* may have had information that tuberculosis had shown itself in this herd at some former time, still if at the time of the sale she had reason to believe, and did believe, that such disease had been entirely eradicated, and that the cattle in that herd were then entirely healthy and free from such disease, then she would not be liable in this action, and

your verdict must be for the defendant." Independent of the statute *Mrs. Clapp* could not be held liable unless the heifers, or one of them, at the time of the sale, was infected with such disease, and she knew, or had reasonable ground for knowing, that they were at the time so infected. As for the defendant *Brown*, it appears that he was never on the farm before the sale, and never saw any of the cattle before. The nonsuit as to him was clearly right.

3. But a recovery is sought under and by virtue of ch. 467, Laws of 1885 (sec. 1492a, S. & B. Ann. Stats.), entitled "An act to suppress and prevent the spread of infectious and contagious diseases among domestic animals and provide for the appointment of a state veterinarian." That act provides for the appointment of a veterinary surgeon, defines his duties, prescribes his powers and authority and requirements, and then makes it unlawful and a penal offense to bring infectious or diseased animals within the state. Sections or subdivisions 1–6, inclusive. The sixth section or subdivision goes further, and makes the person or corporation bringing such animals within the state, or who, after the issuing of the governor's proclamation therein provided, shall "receive in charge any animal or animals from any one of said designated localities, and transport or convey the same within the state, shall be deemed guilty of a misdemeanor, and punished therefor, . . . and shall . . . be liable to all persons injured thereby for damages by them sustained." Manifestly, the facts do not bring the case within the provisions of that section or subdivision. The only other provision of the act under which it can be claimed that a recovery may be sought is the seventh section or subdivision, which provides, in effect, that "it shall be the duty of any person or the agent of any corporation who shall have reason to suspect that there is upon their premises any animal or animals affected with contagious or infectious disease to immediately" do certain things and refrain from doing cer-

-tain other things, and then provides that "any person *con-*
*victed* of any of the above acts or omissions shall be 'fined,"
etc., and shall "be liable to all persons injured thereby for
damages by them sustained." Since neither of the defend-
-ants has been so convicted for any of such acts or omissions,
they are not liable by virtue of the act.

With the view we have taken of the case, it is unneces-
sary to consider other questions suggested upon the argu-
ment. It is enough to say that we find no substantial error
in the record.

*By the Court.*— The judgment of the circuit court is af-
firmed.

Decisions as to the validity and construction of statutes respecting
infected animals are found in a note to *Grimes v. Eddy* (126 Mo. 168), in
26 L. R. A. 638.— REP.