ROYS, Trustee, Appellant, vs. FIRST NATIONAL BANK OF MONROE, Respondent.

*January 17—February 12, 1924.*

*Bankruptcy: Preferential payments: Reasonable cause to believe preference would be effected: Circumstantial evidence: Argumentative instructions: Officials of bank: Implied authority to act for bank: Argument of counsel.*

1. In an action by a trustee in bankruptcy to recover from a bank an alleged preferential payment to it by the bankrupt, ample facts and circumstances within the knowledge of the bank and its officials are *held* established by evidence from which the jury could have found that the bank had knowledge of facts and information with regard to the financial condition of the bankrupt such as would cause an ordinarily prudent and intelligent person to believe that payment to the bank would effect a preference over other creditors. p. 15.

2. A question in the special verdict as to whether the bank or "its agents acting therein" had reasonable cause to believe that the payment would effect a preference is too narrow, as it did not include the president and a director and attorney of the bank who had knowledge of facts which might have caused a belief on their part of the debtor's insolvency. p. 16.

3. Where the knowledge of the bank's officers was sought to be imputed to the bank, a requested instruction on the sufficiency of circumstantial evidence should have been given. p. 16.

Roys v. First Nat. Bank, 183 Wis. 10.

4. An instruction as to reasonable cause to believe that a pref-
erence would be effected was erroneous, in that it was ar-
gumentative, reciting plaintiff's grounds for an affirmative
answer, negativing their effect one by one, and must have
impressed the jury that the court favored defendant and that
plaintiff's proof was of little value.  p. 18.

5. Where it appeared that a director of the bank had purchased
property from the bankrupt to enable him to make the pay-
ment, it was error to refuse an instruction as to the implied
authority of the director and the subsequent ratification of
his acts by the bank.  p. 19.

6. An instruction setting forth the claims of one of defendant's
witnesses in detail, and then stating that the jury had heard
all the testimony and had all the evidence before it, is errone-
ous as giving special emphasis to the testimony of one witness
and none to the facts in conflict therewith.  p. 19.

7. Where defendant's attorney, who was one of its principal wit-
nesses, made statements in argument as to happenings which
were not in evidence, it was not sufficient for the court to
tell the jury that if counsel argued evidence not in the case
they were not to consider it, but the objection to such evi-
dence should have been sustained and the jury instructed not
to consider such statements because not in evidence.  p. 20.

8. A lawyer should avoid testifying in court in behalf of his
client except when his testimony is essential to the ends of
justice; and if he is a witness as to other than merely formal
matters, he should leave the trial of the case to other counsel.
p. 20.

APPEAL from a judgment of the circuit court for Green
county: GEORGE GRIMM, Circuit Judge.  *Reversed.*

The appeal is from a judgment dismissing the plaintiff's
complaint.

This was an action to recover $3,063.75 by the plaintiff
as trustee in bankruptcy of the estate of Grant U. Wells,
bankrupt, from the defendant on account of the payment
made by the bankrupt to defendant at a time when he was
insolvent, and which payment it is claimed constituted a
voidable preference within the meaning of the bankruptcy
act.  Wells was adjudicated a bankrupt July 24, 1922, fol-
lowing an involuntary petition filed in the United States
district court for the Western district of Wisconsin.

Wells had been a resident of the city of Monroe for many years, engaged in the insurance and real-estate business. The defendant was a banking corporation located at Monroe, where all of its officers and directors resided with the exception of director Fred J. Karlen, who resided at Winslow, Illinois. Wells was a customer of the defendant bank and indebted to it on March 7, 1922, in the amount of $3,000, on promissory notes which were renewals of other notes.

On March 7, 1922, the bank directors had a meeting at the bank, at which time it was decided not to renew the Wells notes, which were then past due, but to deliver them to the bank's attorney for collection, and to have an examination made of the records to determine what incumbrances there were against the Wells real estate. On this date it is admitted that Wells was insolvent, his assets totaling $41,961.32 and his indebtedness $53,012.99. The case was tried before a jury, which rendered a special verdict in which it found: (1) that at the time of the payment of the indebtedness to the defendant bank on March 7, 1922, neither the bank nor its agent acting therein had reasonable cause to believe that said payment would effect a preference of defendant over other creditors of the same class; (2) that at neither time when director Fred J. Karlen visited the home of Wells on March 7, 1922, did he do so under the authority or direction of the defendant bank; and (3) that at the time when Karlen visited the home of Wells on March 7, 1922, and made the loan of $4,000 to Wells, he did not have reasonable cause to believe that the payment of the $3,000 notes to the bank would effect a preference of the defendant over other creditors of the same class. The court also found as facts that Wells was insolvent at the time the payment to the bank was made, and that such payment did effect a preference. Judgment was rendered on the special verdict, dismissing the action, and the trustee appeals.

The appellant assigns as errors: The refusal of the court to submit in the special verdict certain questions requested by the appellant; errors in questions submitted; refusal to instruct jury as requested; errors in court's instructions; errors in rulings on evidence; in denying appellant's motion for judgment notwithstanding the verdict, for changes in answers, and for judgment on the verdict as amended; refusal to grant a new trial, and improper argument to the jury.

For the appellant there were briefs by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *O. T. Toebaas* and *H. M. Wilkie.*

For the respondent there was a brief by *W. H. McGrath* of Monroe and *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *O. A. Oestreich.*

CROWNHART, J. It appears from the evidence that Wells was ill with pneumonia on March 7, 1922, and had been confined to his bed for several weeks prior thereto. He had been a customer of the defendant bank for many years, but during the year preceding he had transferred a part of his account to a competitive bank in the city of Monroe. For some months prior to March 7, 1922, Wells had been unable to meet all his obligations to the defendant bank, but had reduced such obligations to the extent of $500. The bank had urged payment of his notes without success, and knew that he was hard up. On the 7th of March the directors of the defendant bank concluded not to extend further credit to Wells, but on the contrary to turn over his notes to its attorney for collection. After the directors' meeting was adjourned, director Fred J. Karlen called at the residence of Wells and while there made a purchase of certain real estate of Wells for $4,000, on condition that Wells might return the purchase price with interest and have a reconveyance of the property. It was also understood that out of the purchase price of the real estate Wells

would take up his notes at the defendant bank, which Karlen had informed him were to be turned over to the bank's attorney for collection. Karlen testified that he went to see Wells pursuant to a prior appointment made at the request of the wife of Wells; that he did not represent the bank, and did not go to the home of Wells for the purpose of securing payment of Wells' indebtedness to the bank. On the contrary, Karlen claimed that he made the purchase of the real estate purely as an accommodation and out of friendship for Mr. and Mrs. Wells, with whom he had been long acquainted; that he did not know that Wells was insolvent, and that he did not make the purchase in order to secure preference for the bank. Other officers and directors of the bank testified that Karlen did not act as the bank's agent in his dealings with Wells; that the bank or none of its officers had knowledge of the insolvency of Wells, or that the payment to the bank would effect a preference in favor of the bank over other creditors.

The deed from Wells to Karlen was recorded the same day as the purchase, and immediately thereafter Karlen borrowed from the bank the amount of the purchase price of the property and gave Mrs. Wells a draft therefor. Mrs. Wells thereupon paid the notes of her husband to the bank.

The reasons assigned by the officers of the bank for demanding payment of the notes of Wells were that he had transferred a part of his account to a competing bank, and that his account with the defendant bank was no longer profitable.

It further appeared from the evidence that Wells had speculated in real estate. On March 7, 1922, Wells had three farms, one of the value of $8,000, incumbered with mortgages in the amount of $8,400; another of the value of $12,000, incumbered with $11,000 in mortgages; and a third worth $15,050, upon which he owed $4,144, represented by a note, and $13,750 by a mortgage. Besides these he had an undivided interest in real estate subject to a life

estate worth $1,750, and an interest in an estate of the value of $4,000. The mortgages were of record and Wells had assumed payment of them. His assets totaled $41,961 and his indebtedness $53,012, being insolvent to the extent of $11,051. His deposit in defendant bank on that day was $35.20. Mr. McGrath, the attorney for the bank and a director therein, drew the deed from Wells to Karlen, witnessed it, and took the acknowledgment to the same. Karlen borrowed the purchase price from defendant bank and paid the money over to Mrs. Wells, in the bank, who immediately paid the Wells notes to the bank.

We think it must be conceded that there were ample facts and circumstances within the knowledge of the bank and its officials, established by the evidence, from which the jury could well have found that the defendant bank had knowledge of facts and information with regard to Wells' financial condition such as would cause an ordinarily prudent and intelligent person to believe that the payment to the bank of his notes would effect a preference of the bank over other creditors of Wells.

The record fairly bristles with objections and exceptions on the part of appellant. We shall take note of only a few of them.

The plaintiff asked that the following question be submitted to the jury:

"At the time of the payment in question on March 7, 1922, did the defendant bank or any officer or agent of the defendant bank have reasonable cause to believe that said payment would effect a preference of defendant over other creditors of the same class?"

This request was refused and the court submitted the following question instead:

"At the time of the payment of the indebtedness to the defendant bank on March 7, 1922, did the bank or its agents acting therein have reasonable cause to believe that said payment would effect a preference of defendant over other creditors of the same class?"

It will be seen that the question submitted referred to the reasonable cause for belief of the bank or its agents in connection with the payment of the note, that is, Karlen or the cashier. The question so submitted was too narrow. Under the evidence it is obvious that Ludlow, the president, and McGrath, a director and attorney, had knowledge of sufficient facts and circumstances which may well have caused belief on their part of the insolvency of Wells. The question requested would have included them in its scope and should have been submitted.

Ludlow had testified that he had asked the cashier to get security from Wells due to his financial condition. He knew Wells was hard up,—tied up with farms, was not paying his interest. He knew Wells had more money in one farm than he ever could get out,—Wells was doing a small business. He knew Wells had bought equities in land at high prices and prices had dropped,—there was no demand for farms.

McGrath had testified that one reason for forcing collection was that he knew Wells would need a lot of money to carry him when interest on mortgages became due in the spring.

There are many indications in the testimony that Ludlow's and McGrath's information and knowledge were sufficient to warrant a finding that they believed Wells was insolvent on March 7, 1922.

The plaintiff requested instructions on the sufficiency of circumstantial evidence to prove his case. Such an instruction should have been given.

The relation of the officers of a bank concerning the bank's business is naturally close, frank, confidential, and intimate. So far as the public is concerned, such business is secret, and properly so. Thus when it comes to proof of matters of knowledge and belief of such officers affecting the affairs of the bank, the evidence lies in facts and circumstances from which inferences may be drawn as to such

knowledge and belief. It is only by such facts and circumstances that plaintiff may prove his case except by the evidence of hostile witnesses. The plaintiff was entitled to an instruction as to the competency and sufficiency of circumstantial evidence.

The plaintiff excepts to the instructions of the court. The first question was:

"At the time of the payment of the indebtedness to the defendant bank on March 7, 1922, did the bank or its agents acting therein have reasonable cause to believe that the said payment would effect a preference of the defendant over other creditors of the same class?"

On this the court gave the following instruction:

"In law a person is insolvent when if at a fair valuation the aggregate of his property is insufficient in amount to pay his debts. He may be unable to pay his debts as they become due in the ordinary course of business and still be perfectly solvent. And in answering the first question you should bear this distinction in mind.

"The question asks you to determine whether or not, on March 7, 1922, at the time of the payment of Mr. Wells' indebtedness to the defendant bank, the bank had knowledge of facts or information with regard to Mr. Wells' financial condition such as would cause an ordinarily prudent and intelligent person to believe that the payment would effect a preference of the bank over other creditors of the same class.

"As a matter of fact, the debtor, Wells, was insolvent at the time and the payment did effect a preference; but if the proof fails to convince you to a reasonable certainty that the facts and circumstances known to the bank at that time were sufficient to create in the mind of an ordinarily prudent and intelligent person the belief that such payment would effect a preference, then you must answer the question in the negative.

"It is not sufficient if the proof merely shows that the bank had reasons to suspect Wells' insolvency; it must have had knowledge of facts and circumstances such as would induce a reasonable belief of his insolvency. The defendant

may have had many grounds of suspicion that Wells was in failing circumstances and yet no cause for a well-grounded belief of the fact;.it may have been unwilling to trust him farther; it may have felt anxious about its claim and have had a strong desire to have it paid; Mr. Wells may have been unable to pay his obligations as they fell due in the ordinary course of business and have been hard up for ready money; nevertheless there may have been wanting on the part of the bank knowledge of facts such as would cause reasonable belief that the payment of their claim at that time would effect a preference.

"What Mr. Wells knew about his circumstances or whether he intended to effect a preference by the payment is beside the question, just as much as what the bank may have suspected or feared in connection with the matter; the question relates solely to the knowledge the bank had at that time of facts and circumstances and whether it was sufficient to create at that time, in the mind of a prudent and intelligent person, the belief that the then payment of its claim would effect a preference."

These instructions are obviously erroneous. They are argumentative. They recite the plaintiff's grounds for an affirmative answer to the question, and negative their effect one by one. The jury must have been impressed that the court favored the defendant and that plaintiff's proof was of little value.

The second question submitted was:

"At either time when Fred J. Karlen visited the home of Grant U. Wells on March 7, 1922, did he do so under the authority or direction of the defendant bank?"

The instruction of the court on that question follows:

"There is no direct testimony that Mr. Karlen visited the Wells home on March 7, 1922, under the authority or under the direction of the bank; and there is testimony that he did not. Nevertheless, you may consider all the evidence bearing upon the subject, and it is for you to say whether the evidence will warrant the inference that he in fact acted under authority or direction of the bank, and if so whether it is of sufficient force to convince you thereof.

"Mr. Karlen claims that his visit to the Wells home was made solely as a friend and in response to previous appointment; that what he did to help them financially was done primarily for their sakes; and that he did not act as agent for the bank or in his official capacity as a director. You have heard the testimony and have all the evidence before you, consider it."

Here the plaintiff had asked an instruction as to the implied authority of Karlen and subsequent ratification of his acts by the bank. Under the circumstances the request was proper. The request was refused.

The instructions given set forth claims of Karlen in detail, and then the court said: "You have heard the testimony and have all the evidence before you, consider it."

This court said, in *Coman v. Wunderlich,* 122 Wis. 138 (99 N. W. 612), at p. 143:

"A trial judge should not, in charging the jury, give special significance to the evidence on one side of the controversy by speaking of it in detail, especially to those parts favorable to that side, while not mentioning the opposing evidence; nor should he so charge the jury as to refresh their memory as to what was testified to on one side of the controversy while not doing so as to what was testified on the other. This is in harmony with what was said in *Kavanaugh v. Wausau,* 120 Wis. 611, 98 N. W. 550."

That statement is especially applicable here. The court here gave special emphasis to the testimony of Karlen and none at all to the facts and circumstances in conflict therewith. It erred in that regard.

The attorney for the defendant was a director of the defendant bank and one of the principal witnesses in its behalf. He made statements to the jury of circumstances happening in the directors' meeting which were not in evidence. These remarks were objected to by plaintiff's counsel, who called the attention of the court to the state of the record. The court overruled the objection, but told the jury if counsel argued evidence not in the record they were not to

consider it. Under the circumstances this was not enough. The objection should have been sustained and the jury instructed not to consider such statements because not in evidence. Here the attorney had been a witness and he was speaking of an important matter in which he had been a prominent actor. His statements were likely to influence the jury, and the jury should not have been left to their memory of the testimony after the court had overruled the objection.

The third question was:

"At the time when Fred Karlen visited the home of Grant U. Wells on March 7, 1922, and made the loan of $4,000 to Wells, did he have reasonable cause to believe that the payment of the $3,000 notes to the bank would effect a preference of the defendant bank over other creditors of the same class?"

On this question the court instructed the jury:

"The instructions I have given you with reference to the first question apply with equal force to this, and you will bear them in mind when you deliberate upon your answer to this."

Thus the error of the court in his instructions on the first question is repeated and by repetition emphasized.

The errors we have pointed out were prejudicial and sufficient to demand reversal.

There is one other phase of the case to which we must refer. On the question of the propriety of an attorney in a case appearing as a witness to contested facts, we call attention to the canons of ethics of the American Bar Association, namely:

"19. *Appearance of lawyer as witness for his client:*— When a lawyer is witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

Estate of Lehmann, 183 Wis. 21.

This rule is not to be followed simply because the American Bar Association has adopted it, but with better reason because it states ethical considerations that must appeal to every lawyer as sound. A lawyer has a retainer—as a witness he is not entitled to such. He will find it hard to disassociate his relation to his client as a lawyer and his relation to the party as a witness. This case bears witness of that fact.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.