ZEIDLER, Plaintiff in error, vs. THE STATE, Defendant in error.

*December 12, 1925—January 12, 1926.*

*Forgery: When crime is complete: Intent to defraud: Venue: Trial: Voluntary confession: Statements of accused to district attorney: Instructions where making of document is admitted: District attorney:·Acting as witness in case: Argument to jury: Expressing belief in defendant's guilt: Harmless error.*

1. Under sec. 4454, Stats., the offense of forgery is committed at the time of falsely making a note, if done with intent to injure or defraud, it being unnecessary, to constitute the offense, that the forged instrument be actually uttered; and hence the offense is committed in the county in which the note was falsely made, and not where it was uttered.   p. 46.

2. In a prosecution for forgery, a statement by defendant, a banker, to the district attorney prior to the service of the warrant of arrest, admitting that he made the note (which fact he did not deny at the trial), is admissible as freely and voluntarily made, although the district attorney did not warn the defendant of his constitutional rights or that his statements might be used against him.   p. 48.

3. The action of the district attorney in charge of the prosecution in offering himself as a witness and testifying to a conversation with defendant was unethical,·the proper practice being that he withdraw from the case and ask the court to appoint another prosecutor under the provisions of sec. 59.44, Stats.   p. 48.

4. Argument by the district attorney in which he persistently declared his personal belief in the guilt of the defendant was improper, but in view of evidence plainly showing defendant's guilt it was not reversible error.   p. 49.

5. An instruction to convict the defendant if the jury found that he made the note with intent to injure and defraud was not erroneous as omitting to submit the question of the falsity of the note, where defendant's own testimony established the fact that the note was a false or forged document.   p. 49.
6. The fact that defendant tendered the forged note to another bank as collateral security to induce the bank to return other notes, justified the conclusion that the note was falsely made with intent to injure and defraud.   p. 50.

ERROR to review a judgment of the circuit court for Polk county: W. R. FOLEY, Circuit Judge.  *Affirmed.*

*W. T. Doar* of New Richmond, for the plaintiff in error.

For the defendant in error there was a brief by *Howard D. Blanding,* district attorney of Polk county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Blanding* and *Mr. Messerschmidt.*

OWEN, J. On the 13th day of March, 1924, *J. F. Zeidler* (hereinafter called the defendant) was cashier of the Farmers Exchange Bank of Wanderoos, Polk county, Wisconsin. At that time said bank was, and for some time prior thereto had been, in precarious financial circumstances, and had been in the habit of borrowing money from the First Wisconsin National Bank at Milwaukee upon the notes of the bank secured by notes held by the bank against its customers, as collateral security.  On said 13th day of March said Farmers Exchange Bank held a note against one P. S. Jerdee for $234, dated June 4, 1923, and due ninety days after date.  It will therefore be seen that this note was some time past due.  On the 13th day of March, 1924, the defendant made an exact copy of said note, except that the date was changed to March 13, 1924, and by its terms became due sixty days after date.  The note of June 4th bore on its margin the number 2359, while the note of March 13, 1924, bore on its margin the number 2673.  On the 14th day of March, 1924, the defendant sent the note of March 13, 1924, to the First Wisconsin National Bank at Mil-

waukee, together with other notes, to be substituted for certain notes then held by the First Wisconsin National Bank as collateral security to the indebtedness which the Farmers Exchange Bank then owed that bank.    The defendant asked for the return of the notes for which the notes inclosed with the communication of March 14th, including the Jerdee note of March 13th, were to be substituted.

The Farmers Exchange Bank was closed by the state banking commissioner in June, 1924, and taken over by that official for the purposes of liquidation.    In this case the defendant was convicted for forging the March 13th note of P. S. Jerdee, above described, and brings this writ of error to review the judgment.

The attorney for the defendant makes a number of assignments of error based upon the theory that the offense for which the defendant was prosecuted and of which he was convicted is that of uttering forged paper.    Such, however, is not the case.    The information plainly charges the defendant with forgery as defined by sec. 4454, Stats.    Under that section the offense was committed when he falsely made the note of March 13th, if he did it with intent to injure or defraud.    It is not necessary, to constitute the offense of forgery, that the forged document be actually uttered, if the false document was made with intent to injure or defraud.    26 Corp. Jur. 929; *Norton v. State*, 129 Wis. 659, 109 N. W. 531.    Defendant's contention, therefore, that the offense was not committed in Polk county cannot be sustained.

It appears that after the warrant for the defendant's arrest charging him with this offense was in the hands of the sheriff, but before it was served, the defendant presented himself at the office of the district attorney of Polk county, pursuant to the request of the district attorney, and was by him questioned with reference to the making of this note,

and the district attorney took the stand at the trial and testified to the conversation which took place at that interview, as follows:

"I think I showed him the Jerdee note first, and I said: *'Mr. Zeidler,* how about the signature on this note?' That was the State's Exhibit 2 that I showed him. 'How about that signature on this note? Did Jerdee sign it?' He said 'No, he didn't.' I said: 'Who signed it?' 'Why,' he says, 'I did. I did that down there at the Wanderoos Bank.' And *Mr. Zeidler* also said, 'Why it is just a copy. It is just a copy with the exception that it doesn't correspond in number or date,' and I said, 'What did you do with the note?' He said, 'I sent it down to the—to the Milwaukee bank as collateral.' And he also said—well, I think I asked him first, 'Is that the way the bankers do? Make a copy of a note and send it down for collateral?' And he said that is the way he did, or he had been doing lately, and he knew it wasn't the right thing to do, but he said, 'It is just a copy.' Well, I said, 'I call that forgery.' You may inquire."

The defendant objected to this testimony and assigns its reception as error, but the reasons upon which such objection is based seem to be very general. One ground upon which the objection to the reception of this evidence was based was that the district attorney did not warn the defendant that his statements might be used against him. Neither did he warn him of his constitutional rights. While it appears to have been argued in the lower court that the statements made by the defendant to the district attorney upon this occasion were not voluntarily made, that argument was not stressed here. While we held in *Flamme v. State,* 171 Wis. 501, 177 N. W. 596, that the statement of a nineteen-year-old girl coerced from her by the district attorney and the sheriff was not a voluntary statement, and in *Bianchi v. State,* 169 Wis. 75, 171 N. W. 639, it was held that where the district attorney summoned accused to

his office, administered an oath and proceeded to question them, the statements made during the course of such examination were inadmissible in evidence because involuntary, we have no such situation here. This defendant was a banker and man of affairs. Presumably he understood his constitutional rights. He made no statements to the district attorney that he did not testify to in court. At no time has he shown any disposition to deny the fact that he made and signed the note upon which this prosecution was based. His contention is that such signing constituted no offense. "The mere fact that the confession was elicited in an examination, by the officer while he had the accused person in confinement and under the circumstances indicated, is not conclusive that it was not freely and voluntarily given. As the court has before said, a confession may be voluntary and not be volunteered. A confession need not be offered in order to be freely and voluntarily given and render evidence of it competent." *Tarasinski v. State,* 146 Wis. 508, at p. 513 (131 N. W. 889). The statements made by the defendant to the district attorney were freely and voluntarily made and were properly admissible in evidence.

But we must deplore the practice indulged by the district attorney in offering himself as a witness while he was in the active charge of the prosecution. This practice offends against the canon of ethics of the American Bar Association, which, we said in *Roys v. First Nat. Bank,* 183 Wis. 10, at p. 21 (197 N. W. 237), states ethical considerations which must appeal to every lawyer as being sound. If such practice is to be discouraged in a civil case, certainly it is to be deplored in a criminal case. A district attorney is a *quasi*-judicial officer and he should emulate the highest ethics of his profession. If he finds that the interest of justice requires him to testify in a criminal case, he should withdraw from the active prosecution of the case, and ask the court to appoint some other attorney to perform the

duties of a district attorney in the trial of such case, under the provisions of sec. 59.44, Stats.

During his argument to the jury the district attorney persistently declared his personal belief in the guilt of the defendant. This was highly improper. *Hofer v. State*, 130 Wis. 576, 583, 584, 110 N. W. 391. However, this cannot work reversible error. The guilt of the defendant plainly appears. He did not deny that he made the note in question and admitted that he forwarded it to the Milwaukee bank as collateral security for the debt owing by his bank to the Milwaukee bank. He pretends that it was merely a copy of an existing note that he made and forwarded. This is not the fact. The real and true note which the Farmers Exchange Bank held against Jerdee was a note long past due and was not available as collateral security. The note which he tendered the Milwaukee bank was not only a live note, one that would pass as bankable paper, but it did not pretend to be a copy. There can be no question that it was false and forged paper.

The defendant further contends that the court erred in charging the jury as follows:

"If you find from the evidence beyond a reasonable doubt that the defendant, *Zeidler*, when he made the note, Exhibit 2, and signed the name of P. S. Jerdee thereto, did so with the intent wilfully and unlawfully to injure or defraud the said Jerdee, or to injure or defraud the First Wisconsin National Bank of Milwaukee, then you will find the defendant guilty as charged. If you do not find from the evidence beyond a reasonable doubt that the defendant, *Zeidler*, in making said note, did so with such intent to injure or defraud Jerdee or the First Wisconsin National Bank, then you will find the defendant not guilty."

The criticism of this statement is that it did not submit to the jury the question of the falsity of the note; that whether the note was falsely made or forged was one for the jury. Upon the evidence there was no question on this point. The defendant's own testimony fully established the

fact that the note of March 13th was a false and forged document.   It remained only for the jury to determine whether it had been made with intent to injure or defraud. The fact that the very next day the defendant tendered it to the Milwaukee bank as a valid subsisting obligation of Jerdee as collateral security to induce the Milwaukee bank to return other notes which it then held for the same purpose, fully justifies the conclusion that the note was falsely made for the purpose and with the intent to injure and defraud.   Upon the record it appears that the conclusion reached by the jury was well-nigh imperative.

By the Court.—Judgment affirmed.