BAUMGARTNER, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 12—February 5, 1929.*

ESCHWEILER and CROWNHART, JJ., dissent.

For the plaintiff in error there was a brief by *Jacobson & Malone* of Waukesha, and oral argument by *M. A. Jacobson.*

For the defendant in error there was a brief by *Herman R. Salen,* district attorney of Waukesha county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Salen* and *Mr. Messerschmidt.*

ROSENBERRY, J. Each and every member of this court has carefully reviewed the evidence in this case and is of the opinion that there is ample evidence to sustain the finding of the jury made in this case. It is argued here that the case was a close one. An examination of the record discloses that every single fact in the case necessary to sustain conviction

is established by the testimony of more than one witness with the single exception of the act of intercourse. While the defendant was a man only twenty years of age, he had been married, was the father of two children, and hence was not without experience, and the jury might well have asked itself the question—What would a man such as the defendant have in view in taking a girl out for a drive, procuring intoxicating liquor, making her partially drunk, taking her to a secluded spot, following her as he did under the circumstances in this case, if not the one thing with which he is charged?—and it would be very difficult to find any other answer than the one which the jury found. Many circumstances appear in the case which affect the credibility of Mabel Hunkins as a witness. These facts were all for the jury, and the jury quite apparently believed the statements of the State's witnesses and disbelieved the statements of the defendant and his companion Janske, so that the contention that the evidence does not support the verdict must be overruled.

Detailed error is assigned in two respects: first, it is claimed that the court erred because it permitted evidence to be received from which it appeared that the defendant was married November 26, 1924, and that his first child was born February 8, 1925. This testimony was adduced on direct and cross-examination and it was strenuously objected to by the defendant's attorney, but after argument the court admitted the evidence. It is charged here that the district attorney was guilty of misconduct in offering this evidence. The responsibility of admitting this evidence must rest with the court. That the defendant was a married man, that he was the father of two children, that he had been divorced from his wife, appears without objection in the case. It may be admitted that the fact that the first child was born three months after the marriage of defendant was irrelevant to the issues in this case. We are utterly unable to see that

the defendant was in any respect prejudiced by that testimony. The fact that defendant had been married and had been guilty of such misconduct as entitled his wife to a divorce on the ground of cruel and inhuman treatment was certainly much more prejudicial as far as the defendant was concerned than the fact that the first child was born three months after marriage. It is considered that had the testimony to which objection was made been excluded, the result could not have been different and that therefore the admission of this testimony was not prejudicial to the defendant, nor do we find the district attorney subject to censure because he offered this testimony. This was a hotly contested trial, no point which might be of advantage to the defendant was overlooked, and the prosecution was equally zealous and efficient.

It further appears that immediately preceding the trial the district attorney had in his office in the court house near the court room the witnesses before him for examination. It is claimed that Louis Janske, the companion of the defendant, then and there admitted that the hat which Mabel Hunkins had on at the time of the alleged intercourse was found in the car after the defendant and Janske had left the girls and they were leaving for their homes on the next morning. It is claimed that Janske told the district attorney that he threw the hat away at the direction of the defendant and that there was blood on it. Upon the trial he said there was dirt on the hat and that there was no blood on it. To impeach Janske's testimony the district attorney called Mrs. Robert Hunkins, mother of Mabel Hunkins, who testified that Janske said the hat had blood upon it. Dorothy Gertson, Mabel Hunkins, and Lillian Orgas also testified to the same effect. The examination of Janske by the district attorney having taken place in the presence of these witnesses and having called all those present at the time, the district

attorney was in doubt as to whether or not he should take the witness stand and testify in regard to the statement made to him and addressed the court as follows: "Now, if your honor please, I appreciate it is not altogether proper for a prosecuting attorney to take the witness stand and testify, but I think under the circumstances I should do it." The court granted leave to the district attorney to testify solely upon that point. The district attorney was thereupon sworn and testified as follows:

"Yesterday morning shortly before this case was called for trial, I called Louis Janske, Dorothy Gertson, Mabel Hunkins, Mrs. Hunkins, Mr. Hunkins, and the other lady that is from Milwaukee [Lillian Orgas] that is seated back there, into the chambers immediately back of this court room, for the purpose of conferring with them as to the evidence to be offered in this case. I asked Louis Janske about the affair in general and he told me his story, and I asked him particularly about Mabel Hunkins' hat. He told me that Mabel had her hat on that night, had it when she left the car, was not sure whether she had it on when she came back or not; that he found the hat in the car either that night or the next morning, that it was dirty, trampled upon, and had blood on it. I asked him what became of it, and he said he threw it out. I asked him why he threw it out, and he said Harold Baumgartner told him to throw it out."

There was no cross-examination. It is contended that this conduct on the part of the district attorney was contrary to the canons of ethics and constituted prejudicial error. Canon 19 of the American Bar Association Code of Ethics is as follows:

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

In this case at the very end of the trial the district attorney was confronted with a situation which left him in doubt as to the proper course for him to pursue. He submitted the whole matter to the trial court and the trial court was of the opinion that he might properly testify to the statements made by Janske to him for the purpose of impeaching Janske's testimony. The determination of matters of this kind lies largely if not wholly within the discretion of the trial court. The district attorney no doubt felt that his failure to testify would be urged by the defendant as ground for reason to believe that the occurrence did not take place as testified to by the other witnesses. His testimony added nothing to and took nothing away from the record. It was simply confirmatory of the testimony of other witnesses. It related to a collateral matter and did not immediately concern the material facts relating to the crime. This is not a case where an attorney has testified in an action prosecuted by him knowing throughout the course of the trial that he was a necessary and material witness. Under such circumstances as is indicated in *Roys v. First Nat. Bank,* 183 Wis. 10, 197 N. W. 237, the attorney should retire from the conduct of the litigation. The district attorney did not argue the credibility of his own testimony and made very little reference to the incident. It is considered that the court did not err in permitting the district attorney to testify.

In the course of his argument the district attorney, after referring to the conduct of the defendant, said: "Outside of the evidence in this case, members of the jury, your good common sense tells you that Harold Baumgartner did just exactly what Mabel Hunkins said he did." This language is subject to two interpretations. It is self-evident that the district attorney should not appeal to the jury for a conviction of the defendant on matters outside of the evidence in the case. So construed it was improper argument. Taken, however, in connection with the language which preceded it,

it was quite evident that what the district attorney was trying to do was to urge the jurors to bring to the solution of the problem presented to them their experience as men in the world of affairs. So construed the argument was not improper. It was unfortunately worded but cannot be considered prejudicial under all the circumstances of the case.

While we have no authority to review the sentence of the trial court in this case we cannot refrain from making some comments in connection with it. Prior to the amendment of the statute in 1915 the offense which the defendant committed in this case would have been fornication, punishable by imprisonment in the county jail not to exceed six months or by fine not to exceed $200, or by both such fine and imprisonment. By ch. 611 of the Laws of 1915 the age of consent was raised to eighteen years of age and it was provided:

"Any person over eighteen years of age who shall unlawfully and carnally know and abuse any female under the age of sixteen years shall be punished by imprisonment in the state prison not more than thirty-five years nor less than one year, or by a fine not exceeding two hundred dollars."

The penalty for forcible rape regardless of age is "not more than thirty years nor less than one year."

It is quite apparent that the legislature in prescribing the penalty for statutory rape had in mind that the court in fixing the punishment would take into consideration the circumstances of the case. Here there is no evidence which would even tend to support a charge of forcible rape. If the complaining witness was not willing, she certainly was not unwilling. There is no evidence of deceit, enticement, or force. That the complaining witness knew exactly what she was doing is indicated by the fact that she refused the moonshine but willingly joined in drinking the wine. The evidence indicates she was not inexperienced in matters of this kind, and she must have known exactly what scheme was afoot

when she and her companion asked the defendant to get another fellow. We have no disposition to minimize the offense or indicate that it should be in any way condoned, but taking into consideration the sentences imposed in other courts for much more. serious offenses than that of which the defendant is guilty, the penalty in this case seems severe. While we have no authority to modify the sentence, we deem it our duty to make these observations in order that they may be placed in the record.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J. (*dissenting*). I agree with the majority opinion to the effect that there was sufficient evidence in the record to support a conviction. I also concur with what is said as to the severity of the sentence imposed upon the defendant below by the trial court, who permitted the conduct by the district attorney upon which comment is hereinafter made.

I cannot agree, however, that a conviction should stand which follows the methods here used by the district attorney even though permitted by the trial judge.

The district attorney produced three witnesses to testify as to an alleged admission made by defendant's witness Janske. His own testimony, therefore, was purely cumulative and I think a clear and palpable evasion by him of canon 19 of the American Bar Association, quoted in the majority opinion, and I think the permission given by the trial court did not make it proper. The fact, if it be such, as is stated in the majority opinion, that "his testimony added nothing to and took nothing away from the record," only emphasizes the view that his testimony was not "essential to the ends of justice."

The oath required for admission to practice in this state provides, sec. 256.29 (1), "I will abstain from all offensive personality and advance no fact prejudicial to the honor or

reputation of a party or witness, unless required by the justice of the cause with which I am charged."

The district attorney repeatedly and persistently brought to the attention of the jury that the defendant had been guilty of another sexual transgression, as was self-evident by comparing the date of his marriage with the birth of his first child. As part of the State's case the district attorney called the defendant's divorced wife as a State witness, proved by her that their marriage was in 1924, and then, over objection, she was permitted to testify as to the number of children and the age of the first child, he not being content with her first answer that the child was three years old. He was persistent in obtaining the dates of the birth of the first and second child and of the divorce. He then elicited from this witness, still over objection, the age and birth date of defendant. Defendant's motion to strike out all that testimony was denied. There was no cross-examination of this witness. The district attorney then produced and offered in evidence the certificate of marriage between these two, referring particularly to the part disclosing the age of defendant. This certificate was admitted, and thereupon it became a matter of record that the marriage was on November 26, 1924. By this indirect method, therefore, the district attorney brought in as part of the State's case the fact of defendant's marriage in November being followed by the birth of a child in February. If the marriage certificate, then in the possession of the district attorney, was proper and competent to prove defendant's age or the fact of the marriage, then the former wife was an unnecessary witness. In any event the date of the birth of the first child was utterly and absolutely immaterial; could have been dragged in only for an ulterior purpose and to scandalize and prejudice defendant. The defendant's age was the only material fact necessary to be proven, and the certificate offered would have been sufficient for that. The defendant

on his own behalf, after all such evidence had been admitted, was asked by his counsel as to his marriage and divorce, and then on cross-examination the district attorney again brought out, over repeated objections, the dates of the marriage and of the births. Over objection he was allowed to cross-examine the defendant as to the grounds for the divorce and that he interposed no defense in that action.

The district attorney's argument to the jury was made a matter of record. During that argument he referred to the divorce of four months prior to the day of the assault and that defendant was "the father of two children." Again, in closing he speaks of the defendant as the father of two children; married on November 26, 1924, one child born February 8, 1925, and the other August 31, 1926.

That all this was a plain, flagrant, inexcusable, and unwarranted violation of professional ethics seems beyond question, and his sole justification in his brief here seems to be his claim that it was a proper method of testing defendant's credibility and of displaying the district attorney's vigor!

That a lawyer is an officer of the court, and when functioning as district attorney has the additional qualification of being a *quasi*-judicial officer, has become trite in this state (*State v. Peterson*, 195 Wis. 351, 359, 218 N. W. 367), where it was held that the participation of an attorney paid by private parties to assist the district attorney in the trial of a criminal case was sufficient to set aside the conviction (p. 358), and particularly *O'Neil v. State*, 189 Wis. 259, 207 N. W. 280, wherein the former decisions are reviewed and a conviction set aside because of the improper remarks of the district attorney. See, also, *In re Law Examination*, 191 Wis. 359, 361, 210 N. W. 710; *Lawver v. Lynch*, 191 Wis. 99, 102, 210 N. W. 410; *Zeidler v. State*, 189 Wis. 44, 48, 206 N. W. 872, where this court deplored

the practice of the district attorney offering himself as a witness, as in this case, while in active charge of the prosecution, and citing *Roys v. First Nat. Bank,* 183 Wis. 10, 30, 197 N. W. 237, where the testifying by an attorney in a civil case was condemned as a violation of the same canon of ethics. See, also, *Hepp v. Petrie: Appeal of Meissner,* 185 Wis. 350, 355, 200 N. W. 857.

The duty of the district attorney as such *quasi*-judicial officer to see to it that a conviction shall only be had in accordance with law was emphasized in *Bianchi v. State,* 169 Wis. 75, 95, 171 N. W. 639. The necessity that such an officer should be free from any personal interest that might arise from being connected with possible civil litigation involving the same situation was emphasized in *Coon v. Metzler,* 161 Wis. 328, 334, 154 N. W. 377. These later cases are but carrying out what was always recognized as proper public policy in such cases as *Sasse v. State,* 68 Wis. 530, 533, 32 N. W. 849; *State v. Russell,* 83 Wis. 330, 334, 53 N. W. 441. In *Lukas v. State,* 194 Wis. 387, 390, 216 N. W. 483, the testimony given by the district attorney was there held admissible because he refrained entirely from participating in the trial, which was conducted by an assistant district attorney. In *Corti v. Cooney,* 191 Wis. 464, 471, 211 N. W. 274, the clause of the oath as quoted above was quoted at page 471, and for a similar violation by plaintiff's counsel, but in the trial of a civil suit, the judgment was reversed and, as stated (p. 472), "a reprimand to the attorney does not cure the wrong done to litigants." If such was proper ruling in a civil case, much more should it be in a criminal case, and I think we should do here what was done in *O'Neil v. State, supra,* p. 264, viz.: see to it that the administration of the criminal law shall not be brought into disrepute. I see no good reason, statutory or otherwise, why the State itself, whose voice it is that proclaims these

rules for the conduct of the officers of its courts, shall be a preferred litigant over an individual, and be permitted to alone reap the advantages of such violations of professional ethics.

I am authorized to state that Mr. Justice CROWNHART joins in this dissent.