PETERSON, Plaintiff and Respondent, v. WARREN, Defendant: HOME INSURANCE COMPANY, Defendant and Appellant.

*June 7—July 1, 1966.*

548

552

554

For the appellant there was a brief by *William F. Nelson* and *Stafford, Rosenbaum, Rieser & Hansen,* all of Madison, and oral argument by *Mr. Nelson.*

For the respondent Vernon Leroy Peterson there was a brief by *Robert I. Perina* and *Jasper, Winner, Perina & Rouse,* all of Madison, and oral argument by *Robert I. Perina.*

For the defendant Harold Edwin Warren there was a brief and oral argument by *Donald F. Rumpf* of Cambridge.

WILKIE, J.

### *Minnesota Law Applies.*

The first issue presented on this appeal is whether Minnesota law applied in determining the rights of the parties under the Minnesota insurance policy.

Appellant Home Insurance Company asserted, among others, the policy defense of lack of notice of accident by the insured.[1] The trial court concluded that Minnesota contract law should govern and construed Minnesota law as (1) imposing absolute liability to the amount of $10,000 upon the insurer upon the filing of an SR–22, and (2) requiring the insurer to assume the burden of proof on the notice defense in regard to the damages in excess of the $10,000. Appellant contends that the trial court erred first, in applying Minnesota as opposed to Wisconsin law, and second, in its interpretation of the Minnesota contract rules.

---

[1] "10. **Notice of Accident:** When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

As to the applicable law governing the legality of a contract and a determination of rights under that contract, this court acknowledged, in *Estate of Knippel,* that the choice of governing law is "basically a question of the intention of the parties . . . [and that] in the absence of evidence to the contrary, the law of the place of making the contract is presumed to be intended unless the place of performance be different." [2] It was also recognized there [3] that this traditional test had recently fallen into disfavor, yielding to the "grouping of contacts" or "center of gravity" theory. Although *Knippel* alluded to both of these countervailing theories, it was not necessary actually to make a choice between the two for the reason that, under the facts, Wisconsin law would have been applicable in either event.

Similarly, in the instant case Minnesota law would govern under either rule. Turning first to the "intention" doctrine, it is clear that Hogenson and appellant, through its agent, did not specifically agree to be bound by the law of any particular jurisdiction. This being the case, the law of the place of contracting is presumed to be intended unless the place of performance is different. Hogenson did not testify at the trial. Anderson, appellant's agent, understood that the vehicles insured would be used in either Minnesota, Iowa, or Wisconsin, but added that none of the vehicles would be used exclusively in any particular state. The policy itself contemplated performance in those three states, but there was no indication of what proportion of total performance was to be attributed to each. The truck involved was not confined to Wisconsin. While it is undisputed that some activity was to occur outside of Minnesota, the evidence adduced was insufficient to establish, with any definite-

---

[2] (1959), 7 Wis. (2d) 335, 342, 96 N. W. (2d) 514.

[3] *Estate of Knippel, supra,* footnote 2, at page 343, citing *Auten v. Auten* (1954), 308 N. Y. 155, 124 N. E. (2d) 99, 50 A. L. R. (2d) 246.

ness or certainty, a place of performance, for conflicts purposes, other than that state. The mere possibility of operations in another state without proof of their extent, scope, or complexity should not operate to defeat the application of the law of Minnesota, the place of contracting. This conclusion is in accord with a statement by this court in *Ritterbusch v. Sexmith* that:

"No case has been cited to us from the decisions of this court or any other which holds that the obligation of an automobile liability policy is to be interpreted by any law other than that of the state where the contract was made. Considering the great volume of litigation growing out of automobile accidents this dearth of authority is significant and not to be explained except by acknowledging the principle that the law of the state where the contract is made determines the obligations of the contract, not the law of the state where performance happens to be required." [4]

Other than *Knippel,* this court has not addressed itself at length to the so-called "grouping of contacts" or "center of gravity" theory in regard to contract law.[5] This court has, however, recently made this the ground rule in the tort arena,[6] and likewise the Restatement has now adopted the rule that rights under a contract are to be "determined by the local law of the state with which the contract has its most significant relationship." [7] In general, if the parties have not chosen the desired law and "if performance is to occur wholly or in substantial part in a state other than that of contracting, or if the place of performance is uncertain" certain factors are to be considered to ascertain which state has the most

---

[4] (1950), 256 Wis. 507, 515, 41 N. W. (2d) 611.

[5] Although this rule was mentioned on the rehearing in *Wojciuk v. United States Rubber Co.* (1963), 19 Wis. (2d) 224, 235c, 120 N. W. (2d) 47, 121 N. W. (2d) 294, 122 N. W. (2d) 737.

[6] *Wilcox v. Wilcox* (1965), 26 Wis. (2d) 617, 133 N. W. (2d) 408.

[7] Restatement, Conflict of Laws (2d), Tentative Draft No. 6, p. 6, sec. 332 (1).

significant relationship.[8] These factors are: (1) Place of contracting; (2) place of performance; (3) place of the subject matter of the contract; (4) domicile, nationality, place of incorporation and place of business of the parties; (5) law under which contract will be most effective; and (6) other contacts presented in the given case.[9] A special rule governs insurance policies:

"(1) Except as stated in Subsection (2), the validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined, except as to minute details of performance, by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy.
"(2) If the contacts which the contract has with another state are sufficient to establish a more significant relationship between the contract and the other state, the local law of the other state will govern." [10]

The vehicles used in Hogenson's construction business were ordinarily based in Minnesota, or at least it can be said that they were not principally located in Wisconsin. Thus, under sec. 346i (1), Minnesota law should apply. Even assuming that the vehicles are to be considered as constantly on the move from state to state so as to preclude an automatic application of sub. (1), Minnesota still prevails on the significant contacts test. This is because Minnesota was (1) the residence of Hogenson, the insured; (2) the place where negotiations for the policy were carried on; [11] (3) the place where the insurance policy was issued and delivered; (4) the place where premiums were paid and claims filed; (5) the place where the vehicles covered were generally quartered; and (6) the state issuing licenses on the vehicles. The only Wisconsin connections, besides the fact that the accident

---

[8] Id. at page 30, sec. 332b (b).

[9] Id. at pages 31–34, sec. 332b b.

[10] Id. at page 120, sec. 346i.

[11] The domicile of the insured and the state of the negotiations are factors deemed particularly relevant. See Restatement, Conflict of Laws (2d), Tentative Draft No. 6, p. 124, sec. 346i, comment c.

occurred here, are that defendant Warren and respondent Peterson are Badger residents. Not only are these factors quantitatively offset by those attendant to Minnesota, but they have less qualitative bearing "in light of policy considerations."[12] There is no Wisconsin equivalent to the Minnesota "absolute liability" statute. This statute represents a policy determination by the Minnesota legislature that the public should be protected regardless of the conduct of certain insureds—those whose driving violations indicate their potential menace on the highways—after the accident. There is no indication that application of this provision is limited to accidents occurring in Minnesota. As stated by the trial court:

"The application of the Minnesota Statute to an accident occurring in Wisconsin in no way offends against the public policy of Wisconsin, but it does nurture the integrity of the Minnesota law."

Appellant contends that the Restatement supports its position that Wisconsin and not Minnesota law is controlling in determining rights of the parties. Appellant argues that the following illustration in the Restatement supports its position:

"7. Same facts as in Illustration 2 except that the policy insures A against liability arising from the operation of his automobile. The automobile is garaged in state X but it is understood that the automobile will be in state Y for about one-third of the term of the policy. A has an accident while driving the automobile in state Y and the question is whether the B insurance company must defend the suit and hold A harmless for any damages that may be recovered against him. This question will be determined by the local law of Y."[13]

However, the facts in the illustration are distinguishable from those in the present case in two respects: First,

[12] *Wilcox v. Wilcox, supra,* footnote 6, at page 634.

[13] Restatement, Conflict of Laws (2d), Tentative Draft No. 6, p. 125, sec. 346i, comment *d*, Illustration 7.

it was not shown that the truck owned by Hogenson would actually be in Wisconsin for one third of the time. Second, Illustration 2 discloses that for purposes of Illustration 7, the insurance was solicited and delivered, and the premium paid in state Y (or Wisconsin, its equivalent in the present case). Thus, Illustration 2 is as follows:

"2. Same facts as in Illustration 1 except that the insurance is solicited, the premium paid and the policy delivered while A is on a visit to state Y, the state of the insurance company's incorporation. X is the state whose local law governs the validity of the contract and the rights created thereby." [14]

Illustration 1, also referred to, is as follows:

"1. In state X, A is solicited by the agent of the B insurance company to purchase fire insurance on A's house in X. A is domiciled in X while B is incorporated in state Y. A agrees to purchase the insurance and, upon payment by him of the premium, the agent countersigns a prepared. policy form and delivers it to A. X is the state whose local law governs the validity of the contract and the rights created thereby." [15]

Thus, under either the "intention" of the parties theory or the "grouping of contacts" theory, the correct law to apply in determining the substantive rights of the parties under the insurance contract was that of Minnesota.

### Burden of Proof on Notice of Accident.

The second issue on this appeal is whether the trial court's interpretation of applicable Minnesota law was correct in placing on the insurer the burden of proof as to the failure of notice of the accident.

In interpreting what the Minnesota law was as to the rights of the parties with respect to asserting the in-

[14] Id. at page 124, Illustration 2.
[15] Id. at page 124, Illustration 1.

surance company's policy defense of no notice of the accident by the insured, the trial court held that the filing of the SR–22 invoked the application of Minnesota statute, sec. 170.40, sub. 6 (1) [16] which, in effect, compels the insurer to waive any defenses as to the minimum amount of coverage prescribed by the statute, $10,000,[17] and renders it absolutely liable to that extent. As to the amount of liability in excess of $10,000, the trial court determined that the Minnesota rule was that "policy defenses such as lack of notice of accident, lack of notice of suit and lack of cooperation are conditions subsequent, and consequently affirmative defenses with the burden of proof resting upon the insurer."

Relying on *Juvland v. Plaisance*,[18] the trial court decided that notice of the accident was a condition subsequent, and that therefore the burden of showing a lack of notice rested with the insurer. However, *Juvland* was concerned with a violation of the cooperation clause, a condition subsequent, where the insurer must carry the burden.[19] It did not concern the notice-of-accident clause. Other Minnesota cases have specifically held the giving of notice to be a condition precedent.[20]

---

[16] "The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and *no violation of said policy shall defeat or void said policy.*" (Emphasis added.)

[17] Sec. 170.40 2. (2), Minnesota Stats.

[18] (1959), 255 Minn. 262, 268, 96 N. W. (2d) 537, 541.

[19] See 7 Am. Jur. (2d), Automobile Insurance, p. 509, sec. 176.

[20] *Blazek v. North American Life & Casualty Co.* (1957), 251 Minn. 130, 141, 87 N. W. (2d) 36, 45 (this case actually involved a notice of injury but the same should be true as to a notice of accident); *Hagstrom v. American Fidelity Co.* (1917), 137 Minn. 391, 393, 163 N. W. 670, 671.

In *Hagstrom v. American Fidelity Co.*[21] a policy contained various conditions limiting the liability of the insurer, one of which provided:

"Upon the occurrence of an accident, the insured shall give immediate written notice thereof, with the fullest information obtainable, to the company's home office, or to the agent by whom this policy has been countersigned. If a claim is made on account of such accident, the insured shall give like notice thereof with full particulars." [22]

The court noted that the accident had occurred on September 3, 1913, and the injury complained of was received on that day "and the nature and character thereof, were then known to the superintendent or foreman in charge of the particular work, . . . but no notice thereof was given to defendant, as required by the provisions of the policy just quoted, or otherwise, until October 25, a period of 52 days." [23]

The Minnesota supreme court then held:

"The object and purpose of this provision of the policy was to afford the company an opportunity to make an early and prompt investigation into the claim of loss or injury, not only to learn and ascertain the facts with respect thereto, but also to protect itself from a possible fraudulent and fictitious claim. If there be long delay this purpose of the contract may be wholly defeated, and the insurer deprived of the right to early information in reference to the merits of the claim. The facts may be concealed, witnesses scatter and disappear, rendering a delayed investigation without substantial results. We have heretofore held that the requirement of notice is of the essence of the contract, a condition precedent, and if the delay be such as to defeat the purpose of the contract, and deprive the insurer of the opportunity of an early investigation into the loss, there is a breach of the con-

---

[21] *Supra,* footnote 20.

[22] *Hagstrom v. American Fidelity Co., supra,* footnote 20, at page 392.

[23] Id. at page 393.

tract by the insured which will forfeit his right of indemnity. [Citing cases.]" [24]

The Minnesota law rule is the general rule. [25]

Based on its interpretation of the Minnesota law that the giving of notice of the accident was a condition subsequent the trial court instructed the jury (following the Minnesota rule) to the effect that the burden of proving that no notice was given to it was on the insurer. As we just discussed, the correct rule of substantive law in Minnesota is that the giving of such notice is a condition precedent. The Minnesota rule on the burden of proof on such condition precedent is on the insured where he is the claimant. [26] It follows that when a third person is seeking recovery through the insured the burden of proof is his to prove that such notice was given. [27]

In a further effort to remove from the insurer the burden of proof on the notice of accident appellant contends that the rule as to burden of proof as to this notice is a procedural matter requiring application of the law of the forum (Wisconsin).

The Restatement provides:

"The forum will apply its own local law as to the burden of going forward with the evidence on a particular issue unless the primary purpose of the relevant rule of the state of the otherwise applicable law is to influence decision of the issue rather than to regulate the conduct

[24] Ibid.

[25] See 13 Couch, Insurance (2d ed.), p. 646, sec. 49.19; p. 697, sec. 49.99. 7 Am. Jur. (2d), Insurance, p. 466, sec. 139; p. 468, sec. 141.

[26] See *Blazek v. North American Life & Casualty Co., supra,* footnote 20.

[27] See 21 Appleman, Insurance Law and Practice, p. 14, sec. 12094, as follows: ". . . The plaintiff is required to prove that the insured has complied with all terms and conditions of the policy, the same as the insured would have been required to prove had he been the plaintiff." See also 13 Couch, *supra,* footnote 25, p. 713, sec. 49:123.

of the trial. In the latter event, the rule of the state of the otherwise applicable law will be applied." [28]

Since the primary purpose of the Minnesota rule in the instant case is to influence the decision of the issue rather than to regulate the conduct of the trial, the Minnesota rule applies even if the matter of burden of proof is held to be procedural. In any event the Wisconsin rule on the burden of proof as to conditions precedent is the same as the Minnesota rule,[29] even when the policy is issued outside the state.[30] Thus, there is no need for us to rule upon this further contention of appellant.

That the erroneous instructions as given were prejudicial to the appellant follows from what was said in *Bengston v. Estes:*

". . . a party upon whom an instruction has cast a greater burden than the law requires can justly complain thereof when the answer is unfavorable to him and an erroneous instruction as to the burden of proof upon a material issue must be deemed to affect the substantial rights of the party. . . . The error requires reversal of the judgment." [31]

We must therefore reverse to provide a new trial on the issue of notice of accident, which issue will be resolved on a proper instruction as to the burden of proof.

The trial court determined that the appellant had not received notice of Peterson's suit but the jury found that the insurer was not prejudiced thereby. No issue is made of these determinations on this appeal and they are the law of the case on these questions.

---

[28] Restatement, Conflict of Laws (2d), Tentative Draft No. 11, p. 241, sec. 599d.

[29] *Heimlich v. Kees Appliance Co.* (1950), 256 Wis. 356, 359, 41 N. W. (2d) 359; *Bachhuber v. Boosalis* (1930), 200 Wis. 574, 575, 229 N. W. 117.

[30] *Bachhuber v. Boosalis, supra,* footnote 29.

[31] (1952), 260 Wis. 595, 600, 51 N. W. (2d) 539. See also *Carle v. Nelson* (1911), 145 Wis. 593, 600, 130 N. W. 467.

### Admission of Testimony Concerning Certain Missing Letters.

The third issue is whether the trial court erred in admitting oral testimony as to certain missing letters.

Shortly after the accident, respondent Peterson retained Attorney James Lindholm to represent him. At this time Lindholm allegedly wrote apprising appellant Home Insurance of the accident and he allegedly received a reply from appellant denying coverage. Lindholm withdrew as respondent's attorney early in 1959 and turned the file over to Attorney Donald Abraham. Abraham gave up the practice of law in Wisconsin in 1962 and left the state. He, in turn, passed the file on to Attorney Donovan Riley, who had been associated with him. Riley accepted a research grant in 1964 and later gave the file to Attorney Robert Perina, who ultimately represented Peterson at the trial. Neither a copy of Lindholm's letter nor appellant's response could be found in the file at the time of the trial. Likewise, none of the correspondence could be found in appellant's files. Riley, who was called as a witness, did not recall having ever seen the two documents and was unable to explain their whereabouts. Lindholm was then allowed to describe the contents of the missing correspondence. Abraham could not be located to testify.

Appellant contends that the trial court erred in admitting Lindholm's testimony, which had a bearing on the notice question, for the reason that a foundation was not properly laid under the best-evidence rule. Appellant does not dispute the *contents* of the letter and reply, but rather the very *existence* of the two writings. As stated by McCormick:

"It is apparent that this danger of mistransmission of the contents of the writing, which is the reason for the [best evidence] rule, is only important when evidence other than the writing itself is offered for the purpose of

proving its terms. Consequently, evidence that a certain document is in existence or as to its execution or delivery is not within the rule and may be given without producing the document." [32]

Assuming that the writings were subject to the best-evidence rule, their contents could be proved by other means, in order to prevent a miscarriage of justice, in the event it is impossible to produce the originals. [33] But in order to offer this secondary evidence, a proper foundation must be laid for its introduction [34] by meeting one or both of the following: (1) Showing that a reasonable search was made in the last place where the primary evidence was known to be, or (2) producing the person last known to have its custody. [35] Appellant does not contend that there was a failure to search the last known place of the letters—*i.e.*, the "floating" file—rather appellant urges that the foundation was insufficient because Attorneys Abraham and Perina did not testify on the custody point. But it would not have been necessary to have called Perina since Riley, the person preceding him in the chain, did not remember even seeing the papers in question in the file. At first blush it would appear that a strict application of the foundation rules dictates the calling of Abraham. This is because he was the key link in the chain; Lindholm, who came before him, thought the letters were in the file, while Riley, who followed him, had not seen them. However, the degree of

---

[32] McCormick, Evidence (hornbook series), p. 410, sec. 198.

[33] *Mack Trucks, Inc., v. Sunde* (1963), 19 Wis. (2d) 129, 134, 119 N. W. (2d) 321; *Kubiak v. General Accident Fire & Life Assur. Corp.* (1962), 15 Wis. (2d) 344, 350, 113 N. W. (2d) 46; *Shellow v. Hagen* (1960), 9 Wis. (2d) 506, 516, 101 N. W. (2d) 694.

[34] *Mack Trucks, Inc., v. Sunde, supra,* footnote 33; *Newell v. Clapp* (1897), 97 Wis. 104, 109, 72 N. W. 366.

[35] *Perrin v. State* (1892), 81 Wis. 135, 141, 50 N. W. 516. See generally 1 Jones, Evidence (5th ed.), p. 461, sec. 239; 20 Am. Jur., Evidence, p. 393, sec. 441; McCormick, Evidence (hornbook series), p. 413, sec. 201.

search is a matter lying largely within the discretion of the court [36] and there was no abuse here since respondent "exhausted all the sources of information and means of discovery . . . which have been accessible to him." [37]

### Testimony of Defendant Warren's Attorney.

A fourth issue is whether the trial court erred in allowing Attorney Rumpf (counsel for Warren) to testify.

Appellant called Edward Georgeff, its claims superintendent in the Milwaukee area, as a witness and attempted to introduce, during the course of his testimony, a copy of a letter from Rumpf to Warren as evidence to support its position that Warren failed to cooperate with the insurer. The letter was not received into evidence at that time, but a photostat of the letter was introduced in connection with the later testimony of James Riley, a claims adjuster also called by appellant, to show a lack of cooperation on the part of Warren. Rumpf was then called adversely by respondent Peterson (over appellant's objection) to show that Warren had cooperated with appellant. In his summation to the jury, Rumpf broached the cooperation subject by saying:

"Now when it comes to this field called cooperation you might appreciate that I have a little personal resentment when it comes to this idea of cooperation, because I became very closely involved with cooperation."

The court immediately cautioned:

"Mr. Rumpf, you were allowed to testify even though it is not customary for attorneys to testify due to the exigencies of this case, but please don't place your emotions under argument."

Appellant contends that it was error for the trial court to permit Rumpf to testify at the trial and then argue to

---

[36] 1 Jones, Evidence (5th ed.), p. 464, sec. 240.

[37] Id. at page 465.

the jury from his own testimony. The practice of permitting an attorney involved in the case to testify on behalf of his client is generally frowned on by the Canons of Ethics of the American Bar Association [38] and by this court.[39] However, the attorney is competent and the policy against his testifying, while remaining in the case as an attorney for one of the parties, is not absolute and the trial court may, within its discretion, permit the attorney to testify to prevent an injustice or redress a wrong.[40] For three reasons we are satisfied that there was no abuse of discretion in allowing Rumpf to appear as a witness. First, an attorney is only bound to withdraw from the litigation when he knows in advance that his testimony will be required.[41] Second, appellant introduced a letter written by Rumpf in an attempt to show that his client failed to cooperate in the defense of the case. Having opened the door on this matter, appellant is hardly in a position to complain that Rumpf was called to give his version of the story. The interests of justice [42] would not be served if Rumpf was prohibited from testifying. Third, Rumpf himself did not seek to testify, but

[38] Canon 19 provides: "When a lawyer is witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

[39] See *Jensen v. Heritage Mutual Ins. Co.* (1964), 23 Wis. (2d) 344, 354, 127 N. W. (2d) 228; *Mack Trucks, Inc., v. Sunde, supra*, footnote 33, at pages 134, 135; *Estate of Weinert* (1962), 18 Wis. (2d) 33, 38, 117 N. W. (2d) 685; *Interior Woodwork Co. v. Buhler* (1932), 207 Wis. 1, 9, 238 N. W. 822; *Zeidler v. State* (1926), 189 Wis. 44, 48, 206 N. W. 872; *Roys v. First Nat. Bank* (1924), 183 Wis. 10, 20, 21, 197 N. W. 237.

[40] *Borger v. McKeith* (1929), 198 Wis. 315, 319, 224 N. W. 102; *Baumgartner v. State* (1929), 198 Wis. 180, 186, 223 N. W. 419, 224 N. W. 474.

[41] *Estate of Weinert* and *Interior Woodwork Co. v. Buhler,* both *supra,* footnote 39.

[42] *Borger v. McKeith, supra,* footnote 40.

rather was called adversely by respondent Peterson. While, technically speaking, he still testified on behalf of his client, this situation does not appear to be the evil that Canon 19 is designed to correct.

In addition, appellant waived any complaint that it was improper to have allowed Rumpf to key his argument to the jury off his own testimony by not making timely objection and then moving for a mistrial.[43] At any rate, it is doubtful that Rumpf's argument was improper. This is because at the time the trial judge warned him to mind his emotions, Rumpf had merely stated that he had been personally involved in the cooperation aspects of the case and appellant itself had introduced evidence to this effect.

### Plaintiff's Damages.

A fifth and final issue, presented by plaintiff's motion to review, is whether the trial court abused its discretion in finding the jury's award of damages to the plaintiff to be excessive and in reducing the damages from $27,000 to $18,500.

Appellant has won a new trial on the issue of the notice of accident. Thus, the option given to Peterson by the trial court to accept the reduced damage award is to no avail. It has been our practice where a new trial has been ordered on an issue other than damages, and the damages are in dispute, to order the new trial to include the issue of damages.[44] Accordingly, it is unnecessary for us to consider the issue of damages that has been raised by Peterson and the new trial here shall include the issue of notice of accident and the issue of plaintiff's damages.

---

[43] *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. (2d) 249, 256, 137 N. W. (2d) 6; *Kink v. Combs* (1965), 28 Wis. (2d) 65, 72, 135 N. W. (2d) 789.

[44] *Mustas v. Inland Construction, Inc.* (1963), 19 Wis. (2d) 194, 208, 120 N. W. (2d) 95, 121 N. W. (2d) 274.

The issue of the alleged failure of Warren to cooperate with the insurer was litigated and, as we here rule, determined without error at the trial and that determination is the law of the case.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion. One-half costs on this appeal to be awarded appellant as against respondent Peterson; full costs awarded respondent Warren against appellant; no costs awarded to respondent Peterson.